**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MEDITECH DEVELOPMENT, INC.,<br>*Plaintiff*<br><br>v.<br><br>SOLVENTUM CORPORATION and<br>3M COMPANY,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. SA-26-CV-03581-XR |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Before the Court are Defendants Solventum Corporation and 3M Company's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The motion to dismiss is granted in part and denied in part. Dkt. No. 19. Meditech's claims are dismissed, but the dismissal is without prejudice. Meditech is granted leave to file an amended complaint to address the deficiencies identified in this Order.

For direct infringement, Meditech has pleaded enough facts as to the positive-pressure and tamponade limitations, but not as to the valve, patient-monitoring sensor, or sensor-controlled agent-delivery limitations. As a result, Meditech has not adequately alleged direct infringement of either of the Asserted Patents. These defects may be curable by amendment. The induced-infringement, contributory-infringement, and willful-infringement theories also require additional factual detail and are dismissed without prejudice, with leave to amend.

## I. BACKGROUND

### A. The Patents and the Accused Products

Meditech alleges that it owns United States Patent Nos. 9,138,216 (the '216 Patent) and 9,186,444 (the '444 Patent). The patents, referred to collectively as the Asserted Patents, concern

portable regulated vacuum pump and pressure devices used in negative-pressure wound therapy, or NPWT. The Complaint specifically identifies claim 1 of the ‘216 Patent and claim 18 of the ‘444 Patent. According to the Complaint, those claims require, among other things, pumps that provide both positive pressure and vacuum or negative pressure. Compl. ¶¶ 34, 52.

The Complaint accuses Defendants of selling “integrated NPWT systems including V.A.C.® Therapy, Veraflo™ Therapy, Prevena™ Therapy, and AbThera™ Therapy, that utilize a V.A.C. Ulta or V.A.C. Ulta 4 NPWT unit, wound dressings (sold as a kit and separately), topical wound solutions (specifically for Veraflo Therapy), SensaT.R.A.C.™, VeraT.R.A.C.™, and/or VeraT.R.A.C. Duo™ tubing (sold as a kit and separately), and components of each of the foregoing, that infringe the Asserted Patents.” Compl. ¶ 21. This Order refers to those systems and components collectively as the Accused Products.

Meditech alleges that the accused systems include a touchscreen, a processor, pressure-control pumps, sensors, leak detection, and multi-compartment tubing. It also alleges that the systems can maintain a target vacuum, monitor vacuum at the wound, detect leaks, and, in the Veraflo configuration, deliver topical wound solutions. Compl. ¶¶ 35-43, 54-65.

**B. Notice and the Corporate Transition**

Meditech alleges that, as early as 2020, it discussed the Asserted Patents and their applicability to the Accused Products with 3M employees. Compl. ¶ 28. The Complaint also alleges that 3M spun off its health-care business on or about April 1, 2024, formally launching Solventum as an independent company. Compl. ¶ 5. It also alleges that, on or about March 25, 2026, it sent both Defendants a letter informing them of their infringement. Compl. ¶ 27. According to the Complaint, Defendants continued the accused conduct after receiving notice of their infringement. Compl. ¶ 30.

**C. The Motion to Dismiss**

Defendants move to dismiss the Complaint in its entirety for failure to state a claim. Meditech opposes dismissal and, in the alternative, requests leave to amend to address any pleading deficiency.

## II. LEGAL STANDARD

**A. Rule 12(b)(6)**

A Rule 12(b)(6) motion asks whether the complaint states a claim that is plausible on its face. The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. It does not, however, have to accept legal conclusions, formulaic recitations of an element, or a bare assertion that a defendant is liable. Plausibility requires enough factual content to permit a reasonable inference of liability; proof is not required at this stage. *See Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1220 (Fed. Cir. 2025).

**B. Pleading Patent Infringement**

"A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). Rather, "an adequate complaint need only contain 'some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'" *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024). "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8 LLC*, 4 F.4th at 1353. "But, '[t]o state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims.'"

*Shamoon v. City of San Antonio*, No. SA-18-CV-00718-XR, 2025 WL 1356399, at *4 (W.D. Tex. Apr. 30, 2025). The required level of detail depends in part on the technology. A simple mechanical product may be adequately described by naming the product and explaining in relatively general terms how it meets the claim. More complex technology ordinarily requires more specific factual allegations. *Bot M8 LLC*, 4 F.4th at 1353.

The accused NPWT systems fall on the more complex side of that spectrum. Meditech describes integrated systems that combine programmable processors, positive- and negative-pressure control, sensors, leak detection, agent instillation, and multiple tubing compartments. Compl. ¶¶ 35-43, 54-65. The Complaint therefore must do more than simply identify the products and repeat the words of the claims.

That does not mean the Court may resolve disputed patent terms at the pleading stage. If dismissal would require adopting Defendants' preferred interpretation of a disputed claim term, that dispute ordinarily belongs in claim construction - the later process for deciding what disputed patent language means. Nor may the Court disregard concrete factual allegations about how the accused system operates simply because Defendants dispute them. *See Adnexus*, 160 F.4th 1216; *AlexSam*, 119 F.4th 27.

## III. DIRECT INFRINGEMENT

### A. Overall Pleading

Direct infringement under 35 U.S.C. § 271(a) occurs when a defendant, without authority, makes, uses, offers to sell, sells, or imports a patented invention.

The Complaint does considerably more than name the Accused Products and announce that they infringe. It identifies specific units, tubing, pads, sensors, pumps, and processor functions; it

maps those components to individual claim requirements; and it cites product documentation, including the V.A.C. Ulta 1.5 User Guide. Compl. ¶¶ 36-43, 54-65. That level of detail is enough to make several disputed limitations plausible even under the more demanding standard appropriate for these systems.

Some limitations, however, remain underdeveloped. The Court addresses each disputed limitation separately because the pleading strength is not the same across them all.

**1. Valve limitation**

Claim 1 of the '216 Patent includes a limitation requiring "a valve to one or both adjust and release the vacuum." Dkt. No. 1-1 at 25. Meditech alleges that the V.A.C. Ulta therapy unit "uses a valve to adjust and release the vacuum within the unit." Compl. ¶ 39. That allegation identifies a valve and assigns it a general role, but it does not explain how the accused valve performs the specific function required by the asserted claim.

This conclusion does not resolve claim construction and does not mean the accused valve cannot infringe. It means only that the complaint, as written, lacks the factual bridge between the generic valve allegation and the claimed function. The defect appears curable if Meditech can allege, consistent with Rule 11, how the accused valve operates and how that operation maps to the claim requirement. But, at this time, the limitation is insufficiently pled.

**2. Positive-pressure limitation**

Both claim 1 of the '216 Patent and claim 18 of the '444 Patent include limitations requiring the application of both positive pressure and negative pressure. Dkt. No. 1-1 at 25; Dkt. No. 1-2 at 30. Meditech alleges that the Accused Products include a pump that simultaneously supplies positive and negative pressure to one or more compartments in the identified tubing. It also alleges that the Veraflo configuration activates an instillation pump that applies positive pressure to deliver

topical wound solution through identified pads. Compl. ¶¶ 60, 62, and 64. Those are factual allegations about named components and a described operating mode, not a bare repetition of the words “positive pressure.”

Defendants emphasize that the V.A.C. Ulta is described as a negative-pressure wound-therapy device and that its listed therapy settings use negative pressure. That creates a factual dispute, but it does not make Meditech’s allegation internally impossible. A system marketed principally for negative-pressure therapy may still, as alleged, use positive pressure in a separate instillation function. At the pleading stage, the Court cannot weigh the competing technical descriptions or resolve a disputed claim meaning against Meditech. The positive-pressure limitation is adequately pled.

**3. Tamponade limitation**

Claim 18 of the ‘444 Patent includes a limitation requiring a processor to “activate[] the pump to perform functions including” “applying one or both positive pressure and negative pressure . . . , where the vacuum between the suction device and the tissue of the patient forms a tamponade stopping fluid flow at the tissue of the patient to one or both attain and maintain a vacuum condition.” Dkt. No. 1-2 at 30. The Complaint alleges that applying “a vacuum between the SensaT.R.A.C., VeraT.R.A.C., and VeraT.R.A.C. Duo pads” and the patient’s tissue “forms a tamponade” that stops fluid flow at the tissue. Compl. ¶ 63. The allegation identifies the accused components, the relevant vacuum, and the claimed result at the tissue interface.

Defendants argue that the complaint alleges only that tamponade might occur. The Complaint, however, states the allegation in present terms - it says what the vacuum does. Whether the accused configuration actually forms a tamponade, and whether that configuration falls within

the proper construction of the claim, are merits questions not properly resolved on a motion to dismiss. This limitation is adequately pled.

**4. Patent-monitoring sensor limitation**

The Complaint does not adequately plead the patient-monitoring sensor limitation found in claim 18 of the ‘444 Patent. This limitation requires “one or more sensors for monitoring the patient.” Dkt. No. 1-2 at 30. Meditech alleges sensors that monitor vacuum pressure at the wound and detect leaks, including the Seal Check leak detector. Compl. ¶¶ 37, 65. Those allegations plausibly describe wound-condition monitoring. They do not, however, allege that the accused sensors determine patient physiological parameters of the kind described in the pleaded patent requirements, such as blood pressure, heart rate, temperature, or another patient measure.

A sensor that monitors pressure or seal integrity at the wound is not, without more, a sensor that monitors the patient’s physiological condition. Meditech may be able to cure this deficiency by identifying facts that connect an accused sensor to the patient-monitoring requirement or by clarifying how the particular asserted claim is satisfied. As pled, however, the allegations regarding this limitation are insufficient.

**5. Sensor-controlled agent-delivery limitation**

The related agent-delivery limitation is also inadequately pled. This limitation, from claim 18 of the ‘444 Patent, requires application of positive and/or negative pressure to “at least one . . . compartment[] delivering [an] agent to the tissue of the patient when the one or more sensors monitoring the patient indicate an increase or decrease in the agent is required.” Dkt. No. 1-2 at 30. Meditech alleges that if the Seal Check detector senses no leak, the Veraflo system applies positive pressure to begin instillation of the agent. Compl. ¶ 65. That allegation describes

a sensor-triggered event, but the trigger alleged is seal integrity, not a patient-monitoring signal indicating that the amount of agent should increase or decrease.

A no-leak condition may be a prerequisite to beginning instillation. But the Complaint does not allege that the sensor monitors the patient and determines that a different agent amount is required. That missing connection is apparent from the pleading itself and does not depend on resolving a disputed claim construction. This limitation is inadequately pled.

**B. Disposition of Direct Infringement**

The Complaint's allegations are sufficient as to the positive-pressure and tamponade limitations but are insufficient as to the valve, patient-monitoring sensor, and sensor-controlled agent-delivery limitations. Because direct infringement ultimately requires a single asserted claim to be met in full, and because Meditech has failed to adequately allege at least one limitation of both claim 1 of the '216 Patent and claim 18 of the '444 Patent, the direct infringement claims are dismissed without prejudice to repleading. Any amended complaint should present a coherent claim-by-claim theory that explains how the accused configuration satisfies every required limitation on which Meditech relies.

## IV. INDUCED INFRINGEMENT

Induced infringement under 35 U.S.C. § 271(b) concerns a defendant who encourages another person to infringe. To state the claim, Meditech must plausibly allege an underlying act of direct infringement, the defendant's knowledge of the patent, specific intent to encourage infringement, and affirmative steps directed at bringing about the infringing acts. *Acqis LLC v. Wiwynn Corp.*, 614 F. Supp. 3d 499, 503 (W.D. Tex. 2022). Ordinary product distribution is not enough; the pleaded facts must show conduct directed toward the infringing use. *See Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1193 (D. Or. 2015).

Defendants argue that Meditech failed to allege affirmative steps taken with intent to induce infringement. Meditech alleges that Defendants provided promotional materials, manuals, training materials, clinical guidelines, brochures, technical advice, videos, and website materials that encouraged customers to purchase the Accused Products and showed them how to use those products in an infringing way. Compl. ¶¶ 46, 68. That allegation identifies categories of material but, according to the Defendants, does not describe what any particular manual, training program, video, website page, or technical instruction actually told a customer to do. The Court disagrees. The allegations plausibly show that the Defendants intended to induce infringement and took affirmative steps to do so. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1356 (Fed. Cir. 2018). Meditech also plausibly alleges patent knowledge, at least from notice forward, through the 2020 discussions with 3M personnel and the March 25, 2026, letter to Defendants. Compl. ¶¶ 27-30.

But, as outlined above, Meditech has not adequately alleged direct infringement, which means the induced-infringement claims must be dismissed. The Complaint also often groups 3M and Solventum together as "Defendants." Given the alleged April 2024 spin-off, an amended complaint should identify which company provided which instructions, and when.

The Court grants the motion to dismiss the induced-infringement claims for both patents, without prejudice and with leave to amend. If Meditech amends, it should identify concrete instructional content, the defendant responsible for that content, the relevant time period, and the connection between the instruction and the alleged direct infringement.

## V. CONTRIBUTORY INFRINGEMENT

Contributory infringement under 35 U.S.C. § 271(c) addresses the sale or offer to sell a component that is a material part of a patented invention, is especially made or adapted for use in

infringement, and is not a staple article suitable for substantial noninfringing use. The defendant must also know of both the patent and the infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *TIR Techs. Ltd. v. Amazon.com Servs. LLC*, No. 1:25-CV-865-RP, 2026 WL 1499045, at *6 (W.D. Tex. May 26, 2026), *report and recommendation adopted*, No. 1:25-CV-865-RP, 2026 WL 1853835 (W.D. Tex. June 26, 2026).

The Complaint does more than accuse only complete NPWT systems. It names tubing, pads, dressings, wound solutions, and other associated components. Meditech alleges that SensaT.R.A.C. includes a suction device with a rim that attaches to tissue under vacuum and connects to the V.A.C. Ulta pump as part of an integrated portable device. Compl. ¶¶ 36, 43. Those facts identify a specific physical component and describe its role in the accused system.

The Complaint states that the Accused Products constitute a "material part" of the claimed invention and are especially made or adapted for infringing use. Compl. ¶ 48. This is sufficient. *See Fortinet, Inc. v. Forescout Techs., Inc.*, 543 F. Supp. 3d 814, 840 (N.D. Cal. 2021).

But the Complaint does not adequately allege that Defendants knew about the alleged infringement. Meditech alleges that it discussed the Asserted Patents and their applicability to the Accused Products with 3M employees in 2020. Compl. ¶ 28. But the Complaint does not identify the accused products discussed, the particular patent claims or product functions at issue, or the substance of what Meditech communicated about infringement. Saying that the parties discussed the patents' "applicability" to the Accused Products is too general to show that 3M was told the specifical relevant conduct infringed.

The March 2026 letter is pled in similarly broad terms. The Complaint says the letter informed Defendants of their infringement, but it does not summarize the substance of the accusation, identify which products were connected to which patent, or explain what product

features were said to infringe. The Court must accept that a letter was sent and that it concerned infringement; it need not accept the legal conclusion that the letter necessarily supplied sufficiently specific infringement notice.

The Complaint also does not explain how knowledge from the 2020 discussions with 3M employees should be attributed to Solventum after the April 1, 2024, spin-off. Compl. ¶¶ 5, 28. The Court cannot fill that factual gap by assuming that all pre-spin-off knowledge held by 3M personnel automatically became Solventum's knowledge. The March 2026 letter may provide later notice to Solventum, but the Complaint still must plead enough facts to show what Solventum was told about its own accused conduct.

Meditech also asserts willful blindness, but the Complaint does not allege facts showing deliberate efforts to avoid learning about infringement. So the willful blindness allegation is deficient.

Contributory infringement also requires an underlying act of direct infringement. The Complaint alleges sales of integrated NPWT systems and associated components for use in therapy, and it plausibly supports the inference that healthcare providers or other customers use those systems. But, for the reasons discussed above, Meditech has not adequately alleged that those systems infringe the patents. Nor does the Complaint allege that the relevant components lack a substantial noninfringing use, as is required for a contributory infringement claim.

For those reasons, the contributory-infringement claim must be dismissed.

## VI. WILLFUL INFRINGEMENT

Willful infringement concerns deliberate infringement after a defendant has the required knowledge. At the pleading stage, Meditech must plausibly allege that the defendant knew of the

patent, infringed after obtaining that knowledge, and knew or should have known that its conduct amounted to infringement. *Acqis*, 614 F. Supp. 3d at 504. But willfulness also requires deliberate or intentional infringement beyond mere knowledge. *BSD Crown, LTD. v. Amazon.com, Inc.*, 684 F. Supp. 3d 993, 1002 (N.D. Cal. 2023). Here, Meditech merely alleges that, on "information and belief," Defendants were willfully blind to the possibility that they infringed the Asserted Patents. Compl. ¶¶ 28, 47-49, 69-71.

The Complaint alleges two relevant pre-suit events: discussions with 3M employees in 2020 and the March 25, 2026, letter to both Defendants. Compl. ¶¶ 27-28. Those events may ultimately support a willfulness theory, but the complaint does not provide enough factual detail about either. For the same reasons discussed above regarding the contributory-infringement claims, Meditech has not adequately alleged that Defendants had knowledge of infringement.

The Complaint also alleges that Defendants continued the accused activities after notice and "knew, or should have known," that their conduct infringed. That supports an allegation of continued conduct, but the quoted formulation largely repeats the legal element. The Complaint needs additional factual content that makes willful infringement plausible.

The Court grants the motion to dismiss the willful-infringement claims, without prejudice and with leave to amend. If Meditech amends, it should plead, to the extent it can do so consistently with Rule 11: (1) the substance of the 2020 discussions and March 25, 2026, letter, including any discussion of how the patents were connected to the Accused Products; (2) separate facts supporting knowledge by 3M and Solventum, including any factual basis for attributing pre-spin-off knowledge to Solventum; (3) a patent-specific willfulness theory for both the '216 and '444 Patents; and (4) facts supporting deliberate infringement beyond the bare assertion that Defendants continued their conduct after learning of the patents.

## VII. CONCLUSION AND ORDER

For the above reasons, the Court ORDERS as follows:

**1.** Defendants' motion to dismiss (Dkt. No. 19) is GRANTED IN PART and DENIED IN PART.

**2.** The positive-pressure and tamponade limitations are adequately pled. But the valve, patient-monitoring sensor, and sensor-controlled agent-delivery limitations are not. Because at least one limitation of each asserted claim is inadequately pled, Meditech's direct infringement claims are DISMISSED WITHOUT PREJUDICE. Meditech is granted leave to amend those allegations.

**3.** Meditech's claims for induced infringement of the '216 Patent and the '444 Patent are DISMISSED WITHOUT PREJUDICE. Meditech is granted leave to amend.

**4.** Meditech's claims for contributory infringement of the '216 Patent and the '444 Patent are DISMISSED WITHOUT PREJUDICE. Meditech is granted leave to amend.

**5.** Meditech's claims for willful infringement are DISMISSED WITHOUT PREJUDICE. Meditech is granted leave to amend as described in this Order.

**6.** Meditech is granted LEAVE TO FILE AN AMENDED COMPLAINT **on or before September 11, 2026.**

Nothing in this Order decides the ultimate merits of Meditech's infringement allegations or resolves any disputed claim construction.

Because Meditech's claims are dismissed, its Motion to Compel (ECF No. 43) is DENIED WITHOUT PREJUDICE as moot. Meditech may refile its Motion to Compel at a later date if it files an amended complaint to address the deficiencies identified in this Order.

It is so **ORDERED**.

**SIGNED** this 31st day of August, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE