**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| MEDITECH DEVELOPMENT, INC.<br><br>Plaintiff,<br><br>v.<br><br>SOLVENTUM CORPORATION and<br>3M COMPANY<br><br>Defendants. | Civil Action No. 5:26-cv-03581-XR-RBF<br><br>**Jury Trial Demanded** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 4

A. The Court should decline Defendants' belated, successive challenge to the "ancillary external connections" limitation of the '216 Patent. .......... 4

B. The Amended Complaint plausibly alleges that the suction device is integrated with the mechanical pump without ancillary external connections. .......... 6

C. Defendants' Motion rests on an implausible construction that equates "ancillary" with "indirect;" the '216 Patent uses "ancillary" to mean "back-up." .......... 9

D. The Amended Complaint plausibly alleges the '444 Patent's patient-monitoring sensors and cures the deficiency the Court identified. .......... 11

E. The Amended Complaint States Claims for Induced, Contributory, and Willful Infringement. .......... 15

1. Induced Infringement (35 U.S.C. § 271(b)). .......... 155

(a) What Was Originally Pleaded, and What the Court Found Wanting. .......... 155

(b) The Amended Complaint Added the Missing Information. .......... 156

(i) Actual knowledge. .......... 167

(ii) Willful blindness. .......... 189

(iii) Both forms of knowledge are attributable to Defendants across every time period. .......... 22

2. Contributory Infringement (35 U.S.C. § 271(c)). .......... 223

(a) What Was Originally Pleaded, and What the Court Found Missing. .......... 233

(b) The Amended Complaint Added the Missing Information. .......... 234

3. Willful Infringement. .......... 244

(a) What Was Originally Pleaded, and What the Court Found Missing. .......... 245

(b) The Amended Complaint Added the Missing Information. .......... 245

V. DISMISSAL WITH PREJUDICE IS UNWARRANTED .......... 26

VI. CONCLUSION .......... 267

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*ACQIS LLC v. Wiwynn Corp.*,
614 F. Supp. 3d 499 (W.D. Tex. 2022)....17, 24

*Adnexus Inc. v. Meta Platforms, Inc.*,
160 F.4th 1216 (Fed. Cir. 2025)....4, 8, 11, 14

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024)....3, 4, 7, 14

*Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*,
661 F. Supp. 3d 643 (W.D. Tex. 2023)....20

*Atlas Glob. Techs., LLC v. Sercomm Corp.*,
638 F. Supp. 3d 721 (W.D. Tex. 2022)....17, 20

*BillJCo, LLC v. Apple Inc.*,
583 F. Supp. 3d 769 (W.D. Tex. 2022)....18, 19

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021)....3, 4, 7

*CTD Networks, LLC v. Google, LLC*,
688 F. Supp. 3d 490 (W.D. Tex. 2023)....8, 12

*Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*,
638 F. Supp. 3d 1088 (N.D. Cal. 2022)....21

*Davis v. City of Dearborn*,
No. 2:09-CV-14892, 2010 WL 3476242 (E.D. Mich. Sept. 2, 2010)....6

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)....15, 19, 21

*GPMM, Inc. v. Tharp*,
No. 8:19-CV-128, 2020 WL 6587091 (D. Neb. Feb. 14, 2020)....5, 6

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
892 F.3d 719 (5th Cir. 2018)....26

*Magnolia Med. Techs., Inc. v. Kurin, Inc.*,
169 F.4th 1094, 1103-04 (Fed. Cir. 2026)....14

*Miles v. Port Arthur ISD*,

772 F. Supp. 3d 770 (E.D. Tex. Mar. 25, 2025) ....................26

*Motiva Pats., LLC v. Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. 2019)....................20, 23, 24

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018).................... passim

*Ottah v. Fiat Chrysler*,
884 F.3d 1135 (Fed. Cir. 2018)....................9

*Quikcash, LLC v. Blackhawk Network Holdings, Inc.*,
No. 4:19-CV-876, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020)....................9

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
No. 5:19-CV-243-H, 2021 WL 3030066, at *9 (N.D. Tex. July 2, 2021) ....................27

*SQWIN SA v. Walmart, Inc.*,
No. 4:22-CV-1040-SDJ, 2023 WL 4236896 (E.D. Tex. June 28, 2023)....................9, 11

*Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.*,
430 F. Supp. 2d 642 (W.D. Tex. 2006)....................5, 6

**FEDERAL STATUTES**

35 U.S.C. § 271....................15, 23

Fed. R. Civ. P. 12.................... passim

# I. INTRODUCTION

Defendants ask this Court to do what it declined to do the first time: resolve disputed questions of claim scope and accused-product operation on the pleadings, against the patentee, and against the reasonable inferences the law requires the Court to draw in Meditech's favor. The Motion should be denied in its entirety—as to the four direct-infringement grounds addressed below and, for the reasons set out in Section IV.E, as to the induced, contributory, and willful infringement claims.

*First,* as to the '216 Patent, Defendants raise a brand-new theory—that the accused suction device is not "integrated … without ancillary external connections" — that they could have raised, but did not, in their first motion to dismiss. Meditech's integration allegations have not changed since the original Complaint. The Court has discretion to decline this successive, piecemeal challenge and should exercise it.

*Second*, even on the merits, the Amended Complaint plausibly alleges that the SensaT.R.A.C. suction device connects to the V.A.C. Ulta therapy unit's vacuum pump without ancillary external connections and together forms an integrated portable vacuum device. Defendants' contrary view rests on their own exhibits and their own reading of the claim, neither of which can carry a Rule 12(b)(6) motion.

*Third*, Defendants' entire argument regarding the '216 Patent depends on an incorrect and unsupported construction that equates "ancillary" with "indirect." But the '216 Patent itself uses "ancillary" to mean "back-up"—the opposite of a stand-alone, primary device. Defendants offer no evidence to the contrary. In any event, that is a claim construction dispute for a later day, not a basis for dismissal.

*Fourth*, as to the '444 Patent, the Amended Complaint does exactly what the Court's August 31 Order invited: it ties the accused sensors to the patient-monitoring limitation and to the

’444 Patent’s own definition of the monitored physiological parameters. Whether those sensors satisfy the limitation is a merits question, not a pleading defect.

## II. BACKGROUND

Meditech owns the ’216 and ’444 Patents, which are directed to portable, regulated vacuum pump devices for medical procedures. (Dkt. 45 at ¶¶ 3, 17-18). The Amended Complaint asserts claim 1 of the ’216 Patent and claims 18 and 19 of the ’444 Patent against Defendants’ negative pressure wound therapy (“NPWT”) systems, including the V.A.C. Ulta and V.A.C. Ulta 4 therapy units. (Dkt. 62 at 8).

On May 18, 2026, Defendants moved to dismiss the original Complaint. (Dkt. 19 at 6). As to claim 1 of the ’216 Patent, that motion challenged only two limitations—the “valve” limitation in 1[d] and the “one or more mechanical pumps to apply and regulate both a positive pressure and a vacuum” limitation in 1[g]. (*Id*. at 2). Although Defendants quoted the full text of element 1[g], including the phrase “where the suction device is adapted to be integrated with the one or more mechanical pumps without ancillary external connections,” their argument addressed only the positive pressure requirement, contending that the accused products apply “only negative pressure.” (*Id*. at 9, 13, 14). For the ’444 Patent, Defendants challenged the patient-monitoring sensor limitations in 18[c] and [e2], the positive pressure limitation in 18[d], and the tamponade limitation in 18[e1]. (*Id*. at 5).

On August 31, 2026, the Court granted the motion in part and denied it in part, dismissing the claims without prejudice and granting leave to amend. (Dkt. 44 at 1). The Court held that Meditech had adequately pleaded the positive pressure and tamponade limitations, but not the valve or sensor limitations. (*Id*. at 1, 8). The Court never addressed—because Defendants never raised—the “ancillary external connections” portion of element 1[g]. (*Id*. at 5). As to the ’444 Patent’s patient-monitoring sensor limitation, the Court found the original Complaint’s allegations

of wound-pressure and leak-detection sensors "plausibly describe wound-condition monitoring. They do not, however, allege that the accused sensors determine patient physiological parameters of the kind described in the pleaded patent requirements, such as blood pressure, heart rate, temperature, or another patient measure." (*Id*. at 7). The Court stated Meditech "may be able to cure this deficiency by identifying facts that connect an accused sensor to the patient-monitoring requirement or by clarifying how the particular asserted claim is satisfied." (*Id*.).

Meditech filed its First Amended Complaint on September 3, 2026. (Dkt. 45). Defendants filed this second motion to dismiss on October 1, 2026, despite acknowledging that the Court "disfavors serial motions to dismiss." (Dkt. 62 at 7).

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts the well-pleaded factual allegations as true and draws all reasonable inferences in Meditech's favor. (Dkt. 44 at 3). In patent cases, "patentees need not prove their case at the pleading stage." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024). A complaint need only contain "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). A plaintiff "is not required to plead infringement on an element-by-element basis;" it is enough that the complaint place the accused infringer "on notice of what activity … is being accused of infringement." *AlexSam, Inc.*, 119 F.4th 27 at 42; *Bot M8 LLC*, 4 F.4th at 1352. The Federal Rules "do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

Two corollaries follow, and both defeat this Motion. First, the Court may not resolve a disputed claim construction against the patentee on a motion to dismiss. Where a defendant's non-infringement argument "boil[s] down to objections to [the patentee's] proposed claim

construction," it presents "a dispute not suitable for resolution on a motion to dismiss." *Nalco Co.*, 883 F.3d at 1349. Indeed, the only way a defendant can win dismissal on such a dispute "would be to obtain a claim construction rendering [the] allegations implausible" and a court's "discretion d[oes] not include the option of implicitly construing the disputed claim term *against* . . . the non-moving party" without notice and an opportunity to be heard. *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1222 (Fed. Cir. 2025) (emphasis in original).

Second, the Court may not disregard the Amended Complaint's concrete factual allegations about how the accused system operates simply because Defendants dispute them or point to attached materials. (Dkt. 44 at 4). Well-pleaded allegations "must be taken as true unless they are directly contradicted by documents incorporated" in the Amended Complaint and mere "tension" between an allegation and an exhibit is not enough. *AlexSam, Inc.*, 119 F.4th at 44. A patentee pleads itself out of court only where its own alleged facts are "actually *inconsistent* with and contradict infringement." *Bot M8 LLC*, 4 F.4th at 1354 (emphasis in original).

## IV. ARGUMENT

### A. The Court should decline Defendants' belated, successive challenge to the "ancillary external connections" limitation of the '216 Patent.

Defendants' lead argument—that the accused device is not "integrated … without ancillary external connections"—is one they could have made in their first motion to dismiss but did not. The Federal Rules do not permit that kind of piecemeal motion practice and the Court should decline to entertain it.

Rule 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The limited exception in Rule 12(h)(2) preserves the failure-to-state-a-claim defense only for a Rule 7(a) pleading, a Rule 12(c) motion,

or trial—not for a second pre-answer Rule 12(b)(6) motion. Fed. R. Civ. P. 12(h)(2). This Court has already recognized the point: "Rule 12(h)(2) does not provide an exception to Rule 12(g)'s bar against successive 12(b)(6) pre-answer motions," because a "second 12(b)(6) motion simply does not fall into any of these three categories." *Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 647 (W.D. Tex. 2006). The requirement that a movant consolidate its Rule 12 defenses "is salutary in that it works against piecemeal consideration of a case." Fed. R. Civ. P. 12(g) (Notes of Advisory Committee on Rules—1966 Amendment).

The "ancillary external connections" argument was available to Defendants in May 2026. The phrase is part of element 1[g], which Defendants quoted in full in their first motion; they chose however to attack only the positive pressure portion of that element. (Dkt. 19 at 9, 13). An "objection … available to [the movant] but omitted from [its] earlier motion" is barred. *GPMM, Inc. v. Tharp*, No. 8:19-CV-128, 2020 WL 6587091, at *4 (D. Neb. Feb. 14, 2020).

Nor does the Amended Complaint revive the argument, because Meditech's integration allegations have not changed. The original Complaint already alleged that the SensaT.R.A.C. "suction device connects to the V.A.C. Ulta pump without any ancillary external connections" and that "[t]he combination of the SensaT.R.A.C. suction device with the V.A.C. Ulta therapy unit's vacuum pump forms an integrated portable vacuum device." (Dkt. 1 at ¶ 43). The Amended Complaint restates the same theory in identical terms. (Dkt. 45 at ¶ 57).

"[T]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment" and "Rule 12(g) applies even when the plaintiff voluntarily serves an amended complaint, as long as the defense was available when the first 12(b)(6) motion was made." *Stoffels ex rel.*, 430 F. Supp. 2d at 648. Courts accordingly deny successive motions on precisely these facts—where "the basic

allegations of the claim haven't changed" between the original and amended pleadings. *GPMM, Inc.*, 2020 WL 6587091 at *4. The majority rule is the same: "an unasserted defense available at the time of the initial Rule 12 motion may not be raised in a successive Rule 12 motion in response to an amended complaint." *Davis v. City of Dearborn*, No. 2:09-CV-14892, 2010 WL 3476242, at *4 (E.D. Mich. Sept. 2, 2010).

To be sure, courts retain discretion to excuse a Rule 12(g)(2) defect where a successive motion "is not interposed for delay" and reaching the merits "would expedite disposition of the case." *Stoffels ex rel.*, 430 F. Supp. 2d at 649; *Davis*, 2010 WL 3476242 at *4. But that discretion is not warranted here. Defendants concede that this Court "disfavors serial motions to dismiss." (Dkt. 62 at 7). And unlike the cases in which courts excused the defect because the first motion was never decided or raised only threshold issues of jurisdiction and venue, here Defendants' first motion squarely litigated the sufficiency of claim 1 of the '216 Patent—and lost on the positive pressure limitation. *Stoffels ex rel.*, 430 F. Supp. 2d at 649; *Davis*, 2010 WL 3476242 at *5; (Dkt. 44 at 8). Allowing Defendants a second bite at the same claim, on a theory they could have pressed the first time, is exactly the "piecemeal consideration" that Rule 12(g) forbids. Fed. R. Civ. P. 12. The Court should decline to consider the belated challenge and deny the Motion as to the '216 Patent.

### B. The Amended Complaint plausibly alleges that the suction device is integrated with the mechanical pump without ancillary external connections.

Even if the Court reaches the merits, the Amended Complaint states a plausible claim. It alleges that the V.A.C. Therapy NPWT system "includes one or more mechanical pumps to apply and regulate both positive pressure and a vacuum to the suction device, where the suction device is adapted to be integrated with the one or more mechanical pumps without ancillary external connections to form the integrated portable vacuum device." (Dkt. 45 at ¶ 56). It further alleges,

specifically, that "[t]he SensaT.R.A.C. suction device connects to the V.A.C. Ulta therapy unit's vacuum pump without any ancillary external connections" and that the combination "forms an integrated portable vacuum device." (*Id.* at ¶ 57). And it identifies the V.A.C. Ulta therapy unit itself as "an integrated portable vacuum device." (*Id.* at ¶ 42). Those are concrete factual allegations mapped to the claim language, not the "formulaic recitation" that the plausibility standard forbids. *Bot M8 LLC*, 4 F.4th 1342 at 1352-53.

Defendants respond that their own product manuals and a declaration exhibit show a chain of removable canisters and tubing between the pad and the pump.[1] (Dkt. 62 at 17-18). But that argument misunderstands the Rule 12(b)(6) standard in two ways.

First, Defendants' exhibits do not "directly contradict" Meditech's allegations; at most they create "tension"—and the governing standard is that a well-pleaded allegation "must be taken as true unless … directly contradicted by documents incorporated" in the complaint. *AlexSam, Inc.*, 119 F.4th at 44. In *AlexSam*, the Federal Circuit reversed a dismissal on materially identical reasoning: the defendant's exhibits showed that its subsidiaries performed certain acts, but that was not the same as establishing that the defendant did not, so the allegations had to be credited. *Id*. at 44-45. Here, likewise, that the system can be described as a set of connectable components does not establish that the suction device is not "integrated … without ancillary external connections" under the proper construction of that phrase. The allegations must be taken as true. *Adnexus Inc.*, 160 F.4th at 1223.

---

[1] Defendants suggest the fact the accused therapy unit, canister, and other components can be sold separately renders Plaintiff's infringement claim implausible. *See* Dkt. 62 at 18. Claim 1 of the '216 Patent does not require that all components of the integrated portable vacuum be sold together. Whether or not the accused device is sold and shipped as a single unit or in parts that are assembled prior to use does not bear on infringement.

Second, whether intermediate components defeat "integration" turns on what the claim means—a question the Court cannot resolve against Meditech now. As the Court already explained, it may not "resolve disputed patent terms at the pleading stage," may not adopt "Defendants' preferred interpretation of a disputed claim term," and may not "disregard concrete factual allegations about how the accused system operates simply because Defendants dispute them." (Dkt. 44 at 4). Defendants' insistence that the accused configuration is "the opposite of" an integrated device (Dkt. 62 at 21) is an infringement argument for summary judgment or trial, not a pleading defect. The plausibility standard "does not impose a probability requirement;" it asks only "for enough fact to raise a reasonable expectation that discovery will reveal evidence" of infringement. *Nalco Co.*, 883 F.3d at 1350.

Defendants invoke *CTD Networks*, *Ottah*, and *Qwikcash* for the proposition that a court "need not accept" an implausible claim construction. (Dkt. 62 at 14). But those cases define a narrow exception that does not reach this dispute. The *CTD Networks* court dismissed only because the plaintiff could not "plausibly explain[] how claim construction could help its case"—that is, how claims reciting hardware "could possibly be construed to exclude the hardware components." *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 502 (W.D. Tex. 2023). Dismissal is proper on this theory only where a claim element "cannot plausibly be construed to include or be the equivalent of [the accused structure]." *Id*. That is not this case: Meditech's reading of "integrated … without ancillary external connections" is not facially foreclosed, as Section C explains below. In *Ottah*, the court found that the claim term "book holder" could not "plausibly be construed to include or be the equivalent of a camera holder, in view of the specification and the prosecution history." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018). And in *Qwikcash*, the court found that the plaintiff presented contradictory factual assertions, alleging that

a required personal identification number is created by being supplied by a first-party requestor to an administrator *and* is created by being preset to a default value. *Quikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876, 2020 WL 6781566, at *4 (E.D. Tex. Nov. 17, 2020). Because both allegations could not be true, the court dismissed the infringement claim. *Id*. As shown, the exception reaches "readily evident" bars (like construing a "book holder" to hold a camera) not genuine disputes over a term's scope. *SQWIN SA v. Walmart, Inc.*, No. 4:22-CV-1040-SDJ, 2023 WL 4236896, at *2 n.1 (E.D. Tex. June 28, 2023).

### C. Defendants' Motion rests on an implausible construction that equates "ancillary" with "indirect;" the '216 Patent uses "ancillary" to mean "back-up."

Defendants' argument regarding the '216 Patent depends entirely on an unstated construction: that "without ancillary external connections" means without any intermediate or indirect connection, so that any removable component between the suction device and the pump defeats the limitation. (Dkt. 62 at 15, 20). That construction is unsupported, contradicted by the patent's own usage and, at a minimum, is not the only plausible reading, which is reason enough to deny the Motion.

The '216 Patent uses "ancillary" to mean "back-up," not "indirect." The specification states that "the invention can be used as an ancillary/back-up" vacuum pump, in contrast to use "as a stand-alone primary vacuum pump." (Dkt. 1-1 at 16:58-60). It describes the device operating "in support of hand-operated vacuum devices." (*Id.*). It repeats the usage: the device "can operate as a primary vacuum pump," can "assist … in parallel with existing hand-operated vacuum pumps" or "can operate as a back-up vacuum pump in parallel with existing hand-operated vacuum pumps." (*Id.* at 16:61-63, 9:7-12). The Abstract confirms it, describing a pump that "can be used either as a stand alone unit … or to maintain, assist or as a back up for a hand operated pump." (*Id.* at Abstract). Read in light of this intrinsic evidence, "without ancillary external connections"

describes a self-contained device that does not depend on a separate, back-up external hookup—not, as Defendants would have it, a device that tolerates no intermediate or external component of any kind. Indeed, while Defendants assert that the "the alleged suction device connects to the therapy unit through a chain of *external, removable components*," (Dkt. 62 at 11) (emphasis added), the claim language prohibits only *ancillary* external connections, not all external connections and says nothing about intermediate or removable connections at all. And as noted in the Amended Complaint, the SensaT.R.A.C. pad and tubing are required—not ancillary—components. (Dkt. 45 at ¶ 63). The Amended Complaint's linked documentation further confirms that the canister is also required. (Dkt. 19-1 at Ex. B, p. 1) (linked in the Amended Complaint on p. 16, n.8 and p. 33 n.22 as "36695HCBSP_70-2013-1106-8 ULTA Therapy System OR Poster - V.A.C. & Veraflo™ Therapies.indd at 1").

Nor does Defendants' reliance on the embodiments shown in Figures 4 and 5 of the '216 Patent save their argument. They assert that the tubing in Fig. 4 is the alleged "'ancillary external connection' that the integrated embodiment of FIGS. 5A and 5B eliminates." (Dkt. 62 at 16). Fig. 4, however, does not disclose an "ancillary external connection;" rather it is "a top view of a wireless control unit 419 with two buttons in accordance with an embodiment of the invention for controlling the vacuum device 301 and applying a vacuum to a suction device 435." (Dkt. 1-1 at 2:36-39). And while the '216 Patent describes suction device 435 as an "external suction device," (*id*. at 10:51), it nowhere describes it as "ancillary." As discussed above, the claim language does not prohibit all external connections, only ancillary ones. Figs. 5A and 5B, meanwhile, disclose "a disassembled integral suction and vacuum device 500" and "an assembled integral suction and vacuum device 500," respectively, but suction device 435 is both externally and indirectly connected to vacuum pump 214 via vacuum device housing 510. (Dkt. 1-1 Figs. 5A and 5B; 19:48-

51 ("The energy storage device 215 and the vacuum pump 214 can also be housed in the integral suction and vacuum device housing 510, onto which the suction device can be attached 435."). Thus the very embodiment that Defendants claim discloses an integrated device without ancillary connections uses indirect external connections in a manner similar to the Accused Products.

Defendants' argument is a textbook claim construction dispute and it cannot be resolved against Meditech on a motion to dismiss. In *Nalco*, the Federal Circuit reversed a dismissal because the defendants' non-infringement theory "read like classic *Markman* arguments" and "boil[ed] down to objections to [the patentee's] proposed claim construction, a dispute not suitable for resolution on a motion to dismiss." *Nalco Co.*, 883 F.3d at 1349. In *Adnexus*, the court held that where the parties dispute whether claim terms overlap in scope, "the district court's discretion d[oes] not include the option of implicitly construing the disputed claim term *against* … the non-moving party" without an opportunity to be heard; because the claim's meaning was not "so clear on the only point … ultimately material," the dispute belonged in claim construction. *Adnexus Inc.*, 160 F.4th at 1222 (emphasis in original). The same is true here. Defendants' reading of "ancillary" is, at most, one proposed construction; it is not the "only plausible reading" of the patent, and the Court should "withhold judgment on the construction of such terms until after the *Markman* hearing." *SQWIN SA*, 2023 WL 4236896 at *2.

Because Meditech's construction finds direct support in the specification, Defendants cannot show that element 1[g] "cannot plausibly be construed to include or be the equivalent of" the accused configuration. *CTD Networks, LLC*, 688 F. Supp. 3d at 502.

### D. The Amended Complaint plausibly alleges the '444 Patent's patient-monitoring sensors and cures the deficiency the Court identified.

The Court's August 31 Order gave Meditech a specific roadmap for the '444 Patent's patient-monitoring sensor limitation: it could cure the deficiency "by identifying facts that connect

an accused sensor to the patient-monitoring requirement or by clarifying how the particular asserted claim is satisfied." (Dkt. 44 at 7). The Amended Complaint follows that roadmap.

The Amended Complaint identifies patient-monitoring sensors that are separate and distinct from the vacuum sensor, defeating Defendants' separate-structures objection on its own terms. The Amended Complaint alleges that the V.A.C. Ulta and V.A.C. Ulta 4 therapy units "include sensors for monitoring the patient," including sensors that "identify leaks in real-time" and "[d]etect pressure changes and blockages at the wound site." (Dkt. 45 at ¶¶ 109-15, 124-26). It then supplies the connection the Court found missing, tying those sensors to the patient-monitoring limitation through the '444 Patent's own definitions. It alleges that detection of a leak, pressure change, or blockage at the wound site "is related to the 'condition of the patient' and the 'compression of patient tissue surface,' and, as such, is a patient physiological parameter," citing the patent's identification of a "patient physiological parameter" as one drawn from a group that includes "patient condition" and "compression of patient tissue surface." (*Id*. at ¶ 110, 126). That is no accident of drafting: the '444 Patent expressly defines the monitored parameter to include "a condition of the wound, the wound, a condition of the mammal and the mammal," (Dkt. 1-2 at 35:35-38) and lists "condition of the patient" and "compression of … patient tissue surface" among the qualifying "patient physiological parameter[s]." (*Id*. at 36:30-38).

The Amended Complaint separately alleges that the therapy units separately include a "Smart Instill" feature "with sensors that monitor the size and/or condition of the patient's wound" and that "[t]he 'condition of the wound' is a patient physiological parameter as defined by the '444 Patent." (Dkt. 45 at ¶¶ 112-114). It further alleges that the units contain an alarm that indicates pressure changes, "which are necessarily connected to sensors that trigger said alarm." (*Id*. at ¶ 111). Meditech further alleges that "[t]he Smart Instill feature uses sensors to automatically

determine instillation volume according to wound size or wound dimensions" and that the Accused Products "also include sensors for determining that the instillation of fluid is complete and the fluid is to be removed ['one or more sensors for monitoring the patient']." (*Id*. at ¶ 114). These are concrete factual allegations identifying named features, the parameters they monitor, and the patent language they satisfy.

Defendants' response is a merits argument dressed as a pleading objection. They contend that a sensor monitoring leaks or pressure is "not actually" monitoring the patient. (Dkt. 62 at 25). But as discussed above, the language of the '444 Patent shows otherwise. Regardless, whether a sensor that monitors a "condition of the wound"—which the '444 Patent defines as a qualifying patient physiological parameter—satisfies the "sensors for monitoring the patient" limitation presents a claim-scope dispute, not a pleading deficiency. The Court cannot weigh the competing technical descriptions or resolve a disputed claim meaning against Meditech at this stage. *Nalco Co.*, 883 F.3d at 1350.

Defendants' reliance on the separate listing of a "vacuum sensor" and a "sensor for monitoring the patient" (Dkt. 62 at 24) is likewise a construction argument about whether the same physical sensor can satisfy distinct limitations—again, a *Markman* question, not a basis for dismissal. *Adnexus Inc.*, 160 F.4th at 1222. Indeed, the very authority on which Defendants rely agrees. *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, 169 F.4th 1094, 1103-04 (Fed. Cir. 2026) (evaluating a "separate structure" argument as claim construction at the JMOL stage after a fully-developed record). (Though, as noted above, Meditech's Amended Complaint identifies multiple patient-monitoring sensors in addition to the vacuum sensor).

The Amended Complaint also cures the separate sensor-controlled agent-delivery limitation—element 18[e2], and its claim 19 counterpart, element 19[h]. It alleges that when the

therapy units' "one or more sensors for monitoring the patient" determine "that the instillation of fluid is complete and the fluid is to be removed," thereby "indicating that a 'decrease in the agent is required,'" the pump applies negative pressure to remove the fluid. (Dkt. 45 at ¶ 132). That allegation identifies a patient-monitoring sensor—not the vacuum or leak sensor—as the trigger for the change in agent delivery, which is exactly what elements 18[e2] and 19[h] require. Whether the accused instillation logic maps to the claimed trigger is, at most, a disputed merits and claim-construction question that cannot be resolved against Meditech on the pleadings. Nalco Co., 883 F.3d at 1349.

Finally, the Amended Complaint pleads infringement under the doctrine of equivalents in the alternative: a sensor monitoring leaks, pressure changes, or blockages at the wound site monitors "a physiological parameter of the patient because the wound site is part of the patient." (Dkt. 45 at ¶¶ 129, 143). Taken as true and read in Meditech's favor, these allegations plausibly satisfy the patient-monitoring sensor limitation. *AlexSam, Inc.*, 119 F.4th at 35. The Motion should be denied as to the '444 Patent.

**E. The Amended Complaint States Claims for Induced, Contributory, and Willful Infringement.**

Defendants attack the indirect and willful claims as though the Court wrote on a blank slate, which it did not. In its August 31 Order, the Court sustained most elements of each claim, identified a narrow set of deficiencies, and gave Meditech a roadmap to cure them. (Dkt. 44 at 9). The Amended Complaint followed that roadmap element by element. Defendants' Motion ignores what the Court actually held, and collapses three distinct claims into a single "knowledge of infringement" soundbite (Dkt. 62 at 22-23). It asks the Court to draw against Meditech the inference between commercial outreach and infringement notice, contrary to Rule 12(b)(6). And although the Amended Complaint directly pleads Defendants' knowledge (Dkt. 45 ¶¶ 29, 32-34),

Defendants fault Meditech for not also pleading what they concluded internally—evidence exclusively within Defendants' possession

**1. Induced Infringement (35 U.S.C. § 271(b)).**

Induced infringement requires "an underlying act of direct infringement, the defendant's knowledge of the patent, specific intent to encourage infringement, and affirmative steps directed at bringing about the infringing acts." (Dkt. 44 at 8). The knowledge element may be satisfied by willful blindness. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-771 (2011).

**(a) What Was Originally Pleaded, and What the Court Found Wanting.**

The original Complaint alleged that Defendants supplied "promotional materials, product manuals, training materials, clinical guidelines, brochures, technical advice, videos, and website materials" encouraging infringing use (Dkt. 1 ¶¶ 46, 68), with knowledge and specific intent, "and/or had knowledge of the foregoing by way of willful blindness" (*Id.* at ¶¶ 47, 69). The Court held these allegations "plausibly show that the Defendants intended to induce infringement and took affirmative steps to do so," and that "Meditech also plausibly alleges patent knowledge, at least from notice forward, through the 2020 discussions with 3M personnel and the March 25, 2026, letter to Defendants." (Dkt. 44 at 9.) It dismissed inducement for one reason only—that direct infringement was not yet adequately alleged (*id.* at 9)—and directed Meditech to "identify concrete instructional content, the defendant responsible for that content, the relevant time period, and the connection between the instruction and the alleged direct infringement." (Dkt. 44 at 9).

**(b) The Amended Complaint Added the Missing Information.**

The Amended Complaint supplies each roadmap item for each asserted patent: concrete instructional content (user manuals, clinical guidelines, training videos showing the infringing configuration) (Dkt. 45 ¶¶ 164-171), allocated by defendant and period—"attributable to 3M from

at least 2020 to April 1, 2024 (*i.e.*, the date of the spin-off) and to Solventum and 3M from April 1, 2024 to the present." (*Id.* at ¶¶ 167-171, 175). Defendants' second motion does not renew the affirmative-steps challenge they made—and lost—the first time. That ruling is law of the case.

In any event, the instructional materials Meditech identified teach the infringing configuration: operating the accused V.A.C. Ulta and V.A.C. Ulta 4 units with the SensaT.R.A.C. and Smart Instill features in the manner the asserted claims cover. (Dkt. 45 ¶¶ 164-171). Because the Court already sustained intent, affirmative steps, and patent knowledge, and the Amended Complaint cures direct infringement (Sections IV.A-D), the only remaining element—knowledge of infringement—is now pled through both actual knowledge and willful blindness, and is attributable to each Defendant across every relevant period, as further discussed in subsection (iii), *infra*.

**(i) Actual knowledge.**

The Amended Complaint pleads the specific communications, the 3M personnel who received them, and content tying the Asserted Patents to Defendants' NPWT business, including Defendants' negative pressure wound vacuum pumps: the October 2020 disclosure to Dr. John R. Harper that Meditech's "existing pump patent claims are very relevant to what you sell today" (Dkt. 45 ¶ 29); the March 2021 email to 3M IP counsel Suraj Balusu, routed to Assistant Chief IP Counsel Trisha Adamson (Dkt. 45 ¶ 30); the 2023 broker disclosures to 3M's Erik Drange and Dena Mehrich that "expressly identified U.S. Patent Nos. 9,138,216 and 9,186,444 . . . by number" (Dkt. 45 ¶ 31); and the March 25, 2026 letters enclosing the patents, naming the Accused Products, and identifying the infringed claims (Dkt. 45 ¶ 28; Exs. C-D). This is the quantum this District requires—a disclosure identifying the asserted patents, identifying the accused products, and suggesting that the accused products are either relevant to or infringe the asserted patents. *ACQIS LLC v. Wiwynn Corp.*, 614 F. Supp. 3d 499, 505-06 (W.D. Tex. 2022) (notice letter identifying

the asserted patents and a product category, rather than each accused product, suffices to plead knowledge of infringement).

Because the disclosures identified the Asserted Patents by number—and identified the relevant product category not as a generic "wound care" line but specifically as "Wound Care; Negative Pressure Vacuum Pumps" (Dkt. 45 ¶ 31)—this is not the "general knowledge of a patent portfolio without more" that defeats pre-suit knowledge. *Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 729 (W.D. Tex. 2022). Defendants' characterization of Meditech's disclosures as mere "commercial marketing" (Dkt. 62 at 24) is a competing inference that must be drawn in Meditech's favor.

Defendants overstate *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777 (W.D. Tex. 2022), contending that Meditech's situation is "even less favorable" than the plaintiff's there. (Dkt. 62 at 25). It is not. The court in *BillJCo* dismissed the pre-suit willfulness allegation for a single reason: the plaintiff pleaded only that it had "sent [the defendant] a letter . . . regarding the Patents-in-Suit" but "reveal[ed] almost nothing about the nature and contents" of that letter. *BillJCo LLC*, 583 F. Supp. 3d at 776-77. Meditech's allegations are the opposite. Rather than rest on the bare fact that communications occurred, Meditech's Amended Complaint pleads their specific contents—who sent each disclosure, which 3M personnel received it, when, and what was said—identifying the Asserted Patents by number and connecting them to Defendants' negative-pressure-vacuum-pump products. (Dkt. 45 ¶¶ 28-37.) That is precisely the factual content *BillJCo* found missing.

That Meditech quoted rather than appended correspondence is not the *BillJCo* defect. The defect there was the absence of any pleaded content, which the Amended Complaint supplies in detail. Nor is there anything "striking" (Dkt. 62 at 25) about Meditech's decision not to attach

every communication to its pleading: Meditech produced that correspondence to Defendants prior to the Amended Complaint. Had Defendants believed those documents undercut Meditech's allegations, they were free to attach them to their own motion and ask the Court to consider them. Their choice not to do so refutes their contention that the "only possible inference" from non-attachment is that the correspondence does not support knowledge of infringement. (Dkt. 62 at 24-25). This actual knowledge is attributable to each Defendant across every period for the reasons set out in subsection (iii) below.[2]

**(ii) Willful blindness.**

Meditech also pleads willful blindness, which has two requirements: (1) the defendant subjectively believed there was a high probability that it infringed the Asserted Patents, and (2) the defendant took deliberate actions to avoid confirming that infringement. *Glob.-Tech Appliances, Inc.* 563 U.S. 754 at 769. Meditech independently pleads both prongs in the Amended Complaint. (Dkt. 45 ¶¶29-37).

First (subjective belief of a high probability of infringement): beginning in October 2020, Meditech principal Dr. Neal Lonky "repeatedly disclosed Meditech's patented vacuum-pump technology to 3M and directly connected that technology to 3M's own products and product lines" (Dkt. 45 ¶ 29), telling Dr. Harper the claims were "very relevant to what you sell today" and that the technology "intersects your existing wound care vacuum therapeutic market," while giving 3M the portfolio "with the numbers of the patents, including each of the Asserted Patents, contained therein" (Dkt. 45 ¶ 29); the disclosures were then routed to 3M IP counsel Balusu and Adamson,

---

[2] In any event, even if the Court were to find the pre-suit disclosures insufficient, at a minimum the filing of the original Complaint itself gave Defendants knowledge of the Asserted Patents sufficient to support Meditech's post-suit induced and willful infringement claims. (Dkt. 45 ¶¶27, 177); *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d at 778-79, 781.

which "placed 3M's own intellectual property counsel on notice" (Dkt. 45 ¶ 30); and the 2023 broker disclosures named the patents by number and identified 3M as a "[m]ajor player[]" in the NPWT market (Dkt. 45 ¶ 31). Paragraph 32 alleges Defendants "had a subjective belief that they practiced the Asserted Patents but took deliberate actions to avoid confirming that fact" (Dkt. 45 ¶ 32), and paragraph 33 that they "subjectively believed there was a high probability that they infringed the Asserted Patents" (Dkt. 45 ¶ 33).

Second (deliberate avoidance): paragraph 34 alleges Defendants "took deliberate actions to avoid learning of and confirming their infringement, including diverting Meditech's disclosures to a non-legal idea-submission process, declining to perform any infringement analysis"—routing the disclosure through a "business-prioritization idea review rather than a patent-infringement analysis" (Dkt. 45 ¶ 34)—and that the resulting continued infringement is "willful, deliberate, and egregious." (Dkt. 45 ¶ 37).

These allegations track *Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 661 F. Supp. 3d 643 (W.D. Tex. 2023), which sustained a claim of willful blindness where the plaintiff alleged the defendant "believed with high probability that its . . . products infringed but took deliberate action to avoid learning further details of its infringement." *Atlas Glob. Techs.*, 661 F. Supp. 3d at 652-53. The allegations here are also far stronger than *Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721 (W.D. Tex. 2022)**,** where the plaintiff pleaded only that the defendant "was aware of a patent portfolio without more." *Atlas Glob. Techs., LLC*, 638 F. Supp. 3d at 728-729.

District courts in this Circuit have squarely held that routing patents away from substantive review is actionable deliberate avoidance: alleging that a defendant maintains a practice of not evaluating others' patents—or takes specific acts carrying out that practice—is independently

sufficient to plead willful blindness at the pleading stage. *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 833-34 (E.D. Tex. 2019). Meditech's allegation that Defendants diverted its disclosures—received by 3M's own intellectual-property counsel—into a non-legal "Idea Submission Portal" rather than an infringement analysis (Dkt. 45 ¶ 34) is precisely that kind of deliberate avoidance.

Willful blindness is not a new theory. Meditech pleaded it across all three theories in its original Complaint (Dkt. 1 ¶¶ 28, 47-49, 69-71), and the Court faulted only the absence of "facts showing deliberate efforts to avoid learning about infringement" (Dkt. 44 at 11), which paragraphs 33-34 now supply. As with actual knowledge, this willful blindness is attributable to each Defendant across every period for the reasons set out in subsection (iii) below.

Defendants' contrary reading of these allegations asks the Court to resolve the inferences in ***their favor***—exactly backwards at this stage. Defendants contend that Meditech's excerpts "only show what Meditech did, not what 3M subjectively believed," and that 3M in fact "believed the opposite," having "no reason to be concerned about infringement" while merely "triaging" licensing offers. (Dkt. 62 at 25-26.) But that is a competing inference about 3M's state of mind, and on a Rule 12(b)(6) motion the Court must draw every reasonable inference in Meditech's favor and accept as true the well-pleaded allegation that 3M "subjectively believed there was a high probability that [it] infringed the Asserted Patents." (Dkt. 45 ¶ 33.) What 3M actually believed, and why it routed Meditech's disclosures away from any infringement analysis, are quintessential questions of intent that cannot be resolved on the pleadings—particularly where the evidence of 3M's internal response lies in Defendants' own files.

The *Dali Wireless* case does not aid Defendants. That court rejected a willful-blindness theory because the plaintiff alleged no deliberate conduct to avoid confirming infringement and

no obvious risk of it. *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088, 1100 (N.D. Cal. 2022). Meditech does not rely on any "affirmative duty" to investigate. Rather, Meditech pleads affirmative, deliberate avoidance—diverting disclosures received by 3M's own intellectual-property counsel into a non-legal "Idea Submission Portal" and a "business-prioritization idea review" rather than a patent-infringement analysis (Dkt. 45 ¶ 34)—which is precisely the "deliberate action to avoid learning" that defines willful blindness. *Glob.-Tech Appliances, Inc.*, 563 U.S. at 769. And Meditech separately pleads the first prong directly—a subjective belief in a high probability of infringement (Dkt. 45 ¶ 33)—which forecloses Defendants' assertion that the allegations show only "what Meditech did."

As with actual knowledge, this willful blindness is attributable to each Defendant across every period for the reasons set out in subsection (iii).

**(iii) Both forms of knowledge are attributable to Defendants across every time period.**

Whether 3M's pre-spin-off knowledge is attributable to Solventum—and whether each Defendant is liable for the other's conduct—turns on the parties' own agreements, which the Amended Complaint pleads in detail, which is not a basis for dismissal. Beyond its own conduct, Meditech alleges that each Defendant induces and contributes to the other's infringement. The Amended Complaint pleads an ongoing, mutual supply-and-license relationship in the Accused Products, established by the Intellectual Property Cross-License Agreement, the Master Supply Agreement, and the Transition Contract Manufacturing Agreement. (Dkt. 45 ¶¶ 90-93; Exs. G-I). The Master Supply Agreement provides that "each of SpinCo [Solventum] and Parent [3M] . . . purchase and supply the other Party with certain products" (Dkt. 45 ¶ 92), and the Intellectual Property Cross-License Agreement grants 3M a worldwide license to "make, have made, have, use, sell, offer for sale, import, or otherwise transfer" the products (Dkt. 45 ¶ 91). Because the two

"continue to cross-license and cross-supply one another with the Accused Products and their non-staple components after the spin-off," each Defendant "actively encourages, instructs, and enables the other's" infringement and "supplies to the other the proprietary components that have no substantial non-infringing use." (Dkt. 45 ¶ 94.) Defendants' Motion does not address this cross-inducement and cross-supply theory at all, so it cannot support dismissal of the indirect claims.

This framework also answers the Court's time-period question. The Court directed Meditech, "[g]iven the alleged April 2024 spin-off," to "identify which company provided which instructions, and when." (Dkt. 44 at 9.) The Amended Complaint pleads a continuous chain of liability for both Defendants from 2020 forward. For the pre-spin-off period (2020 to April 1, 2024), 3M is charged as the direct and indirect infringer, and Solventum is charged through the Separation and Distribution Agreement, under which it assumed 3M's liabilities for patent infringement "whether the underlying facts occurred before or after the spin-off"—including the division and its San Antonio IP counsel, which Solventum "absorbed" along with "3M's entire NPWT business." (Dkt. 45 ¶¶ 35-36; SDA § 2.1.) For the post-spin-off period (April 1, 2024 to the present), the cross-license and cross-supply relationship makes each Defendant liable for inducing and contributing to the other's infringement, and 3M remains liable as the ongoing manufacturer and supplier of the Accused Products and their components. (Dkt. 45 ¶¶ 90-94.) Both Defendants are therefore plausibly alleged to be liable—through actual knowledge and willful blindness alike—for infringement dating back to 2020.

**2. Contributory Infringement (35 U.S.C. § 271(c)).**

Contributory infringement reaches the sale of a component that is a material part of the invention, especially made or adapted for infringing use, and not a staple article suitable for substantial noninfringing use, where "[t]he defendant must also know of both the patent and the

infringement." (Dkt. 44 at 9-10). Willful blindness satisfies the knowledge element. *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d at 828-29.

**(a) What Was Originally Pleaded, and What the Court Found Missing.**

Meditech's original Complaint identified the proprietary components and alleged they "constitute a material part of the claimed invention," "are especially made or adapted for use in infringing," and "are not staple articles or commodities of commerce capable of substantial non-infringing use" (Dkt. 1 at ¶¶ 48, 70). The Court found a "material part . . . especially made or adapted for infringing use" adequately alleged (Dkt. 44 at 10) but identified two gaps: knowledge of infringement (Dkt. 44 at 10) and the absence of a "substantial noninfringing use." (Dkt. 44 at 10).

**(b) The Amended Complaint Added the Missing Information.**

The Amended Complaint cures both gaps. The contributory theory is tied to specific, non-staple components of each claimed system: (1) the SensaT.R.A.C. suction device and tubing that connect to the V.A.C. Ulta pump (Dkt. 45 ¶ 85), and (2) the Veraflo instillation solutions and components used with the accused therapy (Dkt. 45 ¶ 86). The accused components are now alleged to be "proprietary to Defendants, are configured to connect only to Defendants' V.A.C. Ulta and V.A.C. Ulta 4 units, and have no substantial non-infringing use." (Dkt. 45 ¶¶ 85-86). The Veraflo solutions in particular "have no substantial use apart from" the accused therapy (Dkt. 45 ¶ 86), because they are formulated and configured to operate only within Defendants' instillation modes.

With these allegations, Meditech has adequately pled the affirmative absence of substantial non-infringing uses. *ACQIS LLC*, 614 F. Supp. 3d at 508 ("[A]ffirmatively pleading the absence of substantial non-infringing uses renders the claim plausible if the pleadings do not undermine

that allegation."). For the reasons above in Section IV.E.1.(c), Meditech has also adequately pled knowledge—actual knowledge and willful blindness alike for all time periods in question.

**3. Willful Infringement.**

Willful infringement requires that the defendant knew of the patent, infringed after obtaining that knowledge, and knew or should have known its conduct infringed, together with "deliberate or intentional infringement beyond mere knowledge." (Dkt. 44 at 11-12). In addition to actual knowledge, "a well-pled claim for willful blindness is sufficient to state a claim for willful infringement." *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d at 836-37.

**(a) What Was Originally Pleaded, and What the Court Found Missing.**

The original Complaint alleged pre-suit knowledge and that the infringement "has been and continues to be deliberate and willful," "prior to the filing of this Action, including by way of willful blindness" (Dkt. 1 ¶¶ 49, 71). The Court held those events "may ultimately support a willfulness theory" but lacked detail, directing Meditech to plead "facts supporting deliberate infringement beyond the bare assertion that Defendants continued their conduct after learning of the patents." (Dkt. 44 at 12).

**(b) The Amended Complaint Added the Missing Information.**

The Amended Complaint supplies each item: the detailed 2020-2023 communications and 2026 letters (IV.E.1.(c)), separate 3M/Solventum knowledge (Dkt. 45 ¶¶ 35-36); patent-specific willfulness allegations with knowledge "prior to the filing of this Action" (Dkt. 45 ¶¶ 96, 176); and deliberate conduct—routing a disclosure received by 3M's own IP counsel away from any infringement analysis while continuing to sell the accused systems (Dkt. 45 ¶¶ 32-34). That deliberate diversion—shunting a patent disclosure received by 3M's own intellectual-property counsel into a non-legal idea-review process to avoid an infringement determination, while

continuing to sell the accused systems—is precisely the kind of deliberate disregard that supports egregiousness, not a bare continuation-after-notice the Court found wanting. (Dkt. 44 at 12).

The willfulness theory is pleaded against each Defendant separately: 3M through its pre-spin-off conduct, and Solventum both as the successor that absorbed the division, its IP counsel, and its patent-infringement liabilities (Dkt. 45 ¶¶ 35-36) and through Solventum's own continued manufacture and sale after receiving direct notice by the March 25, 2026 letter addressed to it (Dkt. 45 ¶ 28; Ex. D). As set forth above in Section IV.E.1.(c), Meditech has adequately pled knowledge—actual knowledge and willful blindness alike for all time periods in question.

To the extent Defendants fault the Amended Complaint for not also detailing what Defendants concluded internally (Dkt. 62 at 26), Rule 8 does not require a plaintiff to plead facts "peculiarly within the possession and control of the defendant." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). Meditech has identified its notice communications. The corresponding internal records—how Defendants handled them—are documents Defendants hold and have not produced.

Because Meditech plausibly alleges knowledge of infringement as to both the '216 and '444 Patents—through actual knowledge and, independently, willful blindness—the Motion should be denied as to the induced, contributory, and willful infringement claims.

## V. DISMISSAL WITH PREJUDICE IS UNWARRANTED

Defendants do not argue that there has been undue delay or bad faith from Meditech, nor do they argue that they would be prejudiced by future amendment. Instead, they argue that "repeated failure to cure deficiencies" alone is enough to ignore the liberal amendment policy codified in Rule 15. Defendants' position is wrong for multiple reasons.

First, with regard to the '216 Patent, Defendants' current motion is based on claim limitations that were not challenged in Defendants' first motion to dismiss or addressed by the Court's order. Thus, there has not been a repeated failure to cure Plaintiff's allegations regarding the integrated … without ancillary external connections limitations.

Second, Defendants' cases do not support their argument. In *Miles v. Port Arthur ISD*, the court declined leave for a second amended complaint as it was frustrated with the "garbled nature of the original complaint" and that the amended complaint was arguably more "garbled" than the first. 772 F. Supp. 3d 770, 791–92 (E.D. Tex. 2025), appeal dismissed, No. 26-40140, 2026 WL 2644100 (5th Cir. June 3, 2026) ("the Amended Complaint includes references to persons and events with no tangible relationship to any of her claims, is written in part in the first person, and is replete with misspellings."). In *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, the court was not only concerned that the plaintiff could not actually cure the deficiencies if it was allowed to replead, but cited plaintiff's "litigation behavior in this case" and the prejudice to defendants as additional reasons for the denial. No. 5:19-CV-243-H, 2021 WL 3030066, at *9 (N.D. Tex. July 2, 2021)

Neither case is applicable here. Defendants have not claimed prejudice, or that Meditech could not cure any deficiencies alleged if allowed to replead, or that Meditech has acted in bad faith. Rather, the record is clear that Meditech followed the Court's roadmap. Should the Court find any allegation insufficient as to any claim or theory of either patent, the Court should grant Meditech leave to amend to address that specific deficiency, rather than dismissal with prejudice.

## VI. CONCLUSION

For the foregoing reasons, Meditech respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety—as to the direct-infringement allegations of the '216 and '444

Patents and as to the induced, contributory, and willful infringement claims. Should the Court find any allegation insufficient as to any claim or theory, Meditech respectfully requests leave to amend to address the specific deficiency identified, and grant Meditech such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: October 15, 2026

*/s/ Brandon T. Cook*

Brandon T. Cook
Texas State Bar No. 24084166
bcook@gunn-lee.com
**GUNN, LEE, & CAVE, P.C.**
8023 Vantage Dr., Suite 1500
San Antonio, Texas 78230
(210) 886-9500 Telephone
(210) 886-9883 Facsimile

Thomas G. Southard (*pro hac vice*)
Brian S. Seal (*pro hac vice*)
**SAUL EWING LLP**
1919 Pennsylvania Ave., NW, Suite 550
Washington, D.C. 20036
Tel: (202) 333-8800
Fax: (202) 337-6065
tom.southard@saul.com
brian.seal@saul.com

Travis K. Waller (*pro hac vice*)
**SAUL EWING LLP**
1270 Avenue of the Americas, Suite 2800
New York, NY 10020
Tel: (212) 980-7200
Fax: (212) 980-7209
travis.waller@saul.com

*Attorneys for Meditech Development, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record who have appeared herein via the Court's electronic filing system on this 15th day of October 2026.

*/s/ Brandon T. Cook*
Brandon T. Cook