**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

MEDITECH DEVELOPMENT, INC.

Plaintiff,

v.

SOLVENTUM CORPORATION and
3M COMPANY

Defendants.

Civil Action No. SA-26-CV-03581-XR-RBF

**Jury Trial Demanded**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS


I. Rule 12(g)(2) Provides No Reason to Postpone Deciding the ’216 Patent Allegations. .....2

II. Meditech Does Not Dispute the Accused System Configuration and Concedes That the Court Can Reject Implausible Claim Constructions. .....3

III. Meditech Advances an Implausible and Plainly Incorrect Claim Construction of “Integrated” and “Ancillary” in an Effort to Avoid Dismissal of the ’216 Patent. .....4

IV. Meditech’s Opposition Confirms Its Allegations of Patient-Monitoring Sensors for the ’444 Patent Do Not Cure Deficiencies in the Original Complaint. .....6

A. Meditech’s Allegations of Sensors That Monitor Pressure “Related To” a Patient Are Not Allegations of Sensors That Monitor a Patient. .....6

B. Meditech Does Not Identify Any Patient-Sensor-Controlled Agent Delivery. .....8

V. Meditech’s Opposition Confirms It Cannot Plausibly Allege Knowledge of Infringement. .....9

A. Meditech’s Factual Recitation Confirms No Actual Knowledge of Infringement. .....10

B. Meditech’s Willful Blindness Theory Is Legally Insufficient. .....12

VI. Dismissal Should Be With Prejudice Because Further Amendment Would Be Futile. .....14

VII. The Court Should Therefore Dismiss the Amended Complaint With Prejudice. .....14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACQIS LLC v. Wiwynn Corp.*,
614 F. Supp. 3d 499 (W.D. Tex. 2022) .................................................. 10, 11

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024)........................................................................ 4

*Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*,
661 F. Supp. 3d 643 (W.D. Tex. 2023) .................................................. 12, 13

*Atlas Glob. Techs., LLC v. Sercomm Corp.*,
638 F. Supp. 3d 721 (W.D. Tex. 2022) .............................................. 10, 11, 12

*BillJCo, LLC v. Apple Inc.*,
583 F. Supp. 3d 769 (W.D. Tex. 2022) .................................................. 11, 12

*CTD Networks, LLC v. Google, LLC*,
688 F. Supp. 3d 490 (W.D. Tex. 2023) ...................................................... 4, 8

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*,
No. 6:20-CV-00318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)................................ 11

*Motiva Pats., LLC v. Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. 2019) .......................................................... 13

*Ottah v. Fiat Chrysler*,
884 F.3d 1135 (Fed. Cir. 2018).................................................................. 6, 8

*Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.*,
430 F. Supp. 2d 642 (W.D. Tex. 2006) ................................................... 1, 2, 3

## Rules

Fed. R. Civ. P. 12................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 3, 14

Fed. R. Civ. P. 12(c) ........................................................................................ 1, 2, 3

Fed. R. Civ. P. 12(g) ............................................................................................... 3

Fed. R. Civ. P. 12(g)(2) ........................................................................................ 1, 2

Fed. R. Civ. P. 12(h)(2) .................................................................................................... 2, 3

Fed. R. Civ. P. 12(h)(2)(B)–(C)........................................................................................... 3

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| Meditech | Plaintiff Meditech Development, Inc. |
| Solventum | Solventum Corporation |
| 3M | 3M Company |
| Defendants | Solventum and 3M, collectively |
| Complaint | ECF No. 1 |
| Amended Complaint | ECF No. 45 |
| Motion or Mot. | ECF No. 62 |
| Opposition or Opp. | ECF No. 68 |
| ’216 Patent | United States Patent No. 9,138,216 (ECF No. 45-1) |
| ’444 Patent | United States Patent No. 9,186,444 (ECF No. 45-2) |
| Asserted Patents | The ’216 Patent and ’444 Patent, collectively |
| Accused Products | *See* Amended Complaint ¶ 21 (“integrated NPWT systems, including V.A.C.® Therapy and Veraflo™ Therapy, , [sic] that utilize a V.A.C. Ulta or V.A.C. Ulta 4 NPWT unit, wound dressings (sold as a kit and separately), topical wound solutions (specifically for Veraflo Therapy), SensaT.R.A.C.™, VeraT.R.A.C.™, and/or VeraT.R.A.C. Duo™ tubing (sold as a kit and separately), and components of each of the foregoing”) |
| NPWT | Negative Pressure Wound Therapy |

***Note on Emphasis: All emphasis in this brief is added unless otherwise noted.***

Meditech again asks the Court to accept labels—"integrated," "patient-monitoring," "knowledge of infringement"—that its pleaded facts do not support. And because its Opposition identifies no new facts it could add, the Amended Complaint should be dismissed with prejudice.

**The '216 Patent.** The claim requires a suction device "integrated with" the pumps. Meditech does not dispute that the accused suction device reaches the pump only through detachable tubing, a removable canister, and more tubing in the therapy unit. Calling that chain of components "integrated" is not plausible, and Meditech barely argues otherwise. Instead, it leads with a procedural objection that elevates form over substance: Rule 12(g)(2), Meditech says, requires the Court to wait. But Meditech concedes that (i) courts hear successive motions that are "not interposed for delay" where doing so "would expedite disposition of the case," *Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 649 (W.D. Tex. 2006); (ii) the defense is preserved for a Rule 12(c) motion or trial; and (iii) its objection reaches only the '216 Patent. Deferring now would change only *when* the Court decides the issue—not *whether* it does.

**The '444 Patent.** The Court previously held that sensors measuring suction pressure and dressing leaks were not the required sensors that monitor the patient. *See* ECF No. 44 at 7. The Amended Complaint points to the same sensors but relabels their readings as "related to" the patient. But relabeling does not plead what the Court required: a sensor that determines a physiological measure "such as blood pressure, heart rate, temperature, or another patient measure." *Id.*

**Induced, contributory, and willful infringement.** Meditech does not dispute that all three theories require knowledge of infringement—not just knowledge of the patents. Yet despite the Court's invitation to plead the substance of its 3M communications, Meditech offers only excerpts.

Those excerpts show offers to sell a patent portfolio. Not one accuses 3M of infringement, and therefore no alleged facts plausibly support that 3M had knowledge of infringement.

Meditech has now had two chances to plead facts rather than labels. It has twice failed to do so. As such, the Amended Complaint should be dismissed with prejudice in its entirety.

**I. Rule 12(g)(2) Provides No Reason to Postpone Deciding the '216 Patent Allegations.**

Meditech's procedural objection is a matter of form, not substance. Meditech does not argue that the '216 Patent issue is premature, that it needs discovery, or that it lacked a fair chance to respond. It argues only that Defendants should have raised the issue sooner. But Meditech admits that Rule 12(h)(2) preserves the defense of failure to state a claim for "a Rule 7(a) pleading, a Rule 12(c) motion, or trial." Opp. at 4–5. And Meditech concedes that "courts retain discretion to excuse a Rule 12(g)(2) defect where a successive motion 'is not interposed for delay' and reaching the merits 'would expedite disposition of the case.'" Opp. at 6 (quoting *Stoffels*, 430 F. Supp. 2d at 649). The only real question, then, is whether the Court decides this fully briefed issue now, or after Defendants answer and file a Rule 12(c) motion making the identical argument. Rule 12(g)(2) does not require that empty exercise.

Both conditions are met. First, there is no delay. As in *Stoffels*—where the court was "compelled to give consideration to [d]efendant's second Rule 12 motion"—there is no "intended delay" here. 430 F. Supp. 2d at 649. Faced with a barebones Complaint, Defendants moved on its most glaring gaps: the "positive pressure" and "valve" limitations. ECF No. 19 at 7–10. That motion succeeded. The Court found the "[v]alve limitation" "insufficiently pled," ECF No. 44 at 5, and dismissed the entire Complaint, *id.* at 13. Meditech's claim that Defendants "lost" on positive pressure, Opp. at 6, ignores that result. And Defendants' first motion already put claim element 1[g] at issue: Meditech concedes that Defendants quoted the element in full, including the

"without ancillary external connections" language. Opp. at 2. This Motion responds to a new and substantially longer—though still implausible and thus deficient—pleading.

Second, deciding the issue now would expedite resolution of a potentially case-dispositive question: whether Meditech's view of "integrated" is plausible. Meditech's approach produces exactly the result *Stoffels* warned against: it "would result in the denial of [d]efendant's second 12(b)(6) motion, but Rule 12(h)(2) would allow [d]efendant[] to raise the defense of failure to state a claim on summary judgment or at trial." *Stoffels*, 430 F. Supp. 2d at 648–49. Defendants would simply re-raise this exact issue under Rule 12(c). This is the very "piecemeal consideration of a case" that Meditech acknowledges the Rules seek to avoid. Opp. at 5 (quoting Fed. R. Civ. P. 12(g) advisory committee's note, 1966 Amendment); Fed. R. Civ. P. 12(h)(2)(B)–(C).

Third, Meditech's rule would not prevent piecemeal litigation—it would guarantee it. By its own terms, the objection reaches only the '216 Patent. *See* Opp. at 6. The Court must decide the '444 Patent and indirect and willful infringement claims regardless. Carving out one limitation of one claim of one patent for a later Rule 12(c) motion would require the Court to review the same pleading twice. Nor does it help Meditech that its integration allegations are, as it says, unchanged. *See* Opp. at 5. That only confirms the issue is ripe: Meditech has had every chance to explain why its allegations are plausible. It has not. Judicial economy favors deciding a fully briefed dispositive issue now, and so the Court should reach the merits.

## II. Meditech Does Not Dispute the Accused System Configuration and Concedes That the Court Can Reject Implausible Claim Constructions.

Meditech does not dispute that the accused system is *modular*—the opposite of "integrated." It is a chain of separate, detachable parts: a pad on a foam dressing in the wound, interconnecting sections of tubing, a removable collection canister, and a therapy unit that houses the pump. *See* Mot. at 14. To the contrary, Meditech embraces it, describing the accused system as

"a set of connectable components." Opp. at 7. This is dispositive. And yet Meditech repeats its conclusory allegation that the system "forms an integrated portable vacuum device." *Id.* at 6–7.

Meditech's suggestion that its conclusory allegations are merely in "tension" with reality, rather than implausible, makes no sense and ignores that Meditech alleges no contrary facts at all. *See id.* at 7. Its comparison to *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 44 (Fed. Cir. 2024), is inapposite. This is not a case in which the parties dispute what certain exhibits show. What is implausible is Meditech's assertion that the Accused Products satisfy the following claim requirement: "suction device . . . integrated with the one or more mechanical pumps without ancillary external connections to form the integrated portable vacuum device."

Rather than explain how its reading of "integrated" is plausible, Meditech declares Defendants' case law inapplicable. But, like the plaintiff in *CTD Networks, LLC v. Google, LLC*, Meditech has not explained, and cannot explain, how a claim requiring a suction device "integrated with the one or more mechanical pumps" could plausibly cover a suction device connected to pumps only through detachable external tubing and a removable canister. *See* 688 F. Supp. 3d 490, 502 (W.D. Tex. 2023)).

**III. Meditech Advances an Implausible and Plainly Incorrect Claim Construction of "Integrated" and "Ancillary" in an Effort to Avoid Dismissal of the '216 Patent.**

Meditech makes no attempt to defend the plausibility of its reading of "integrated." Its sole argument is that the issue is "a question the Court cannot resolve against Meditech now." Opp. at 8. But the law expressly permits the Court to do so at the pleading stage, and doing so is especially appropriate where, as here, Meditech neither explains how its reading *is* plausible nor responds to Defendants' showing that it is not. *See* Mot. at 14–17.

Instead, Meditech homes in on the phrase "without ancillary external connections." But even if Meditech were correct about this phrase (it is not, as explained below), it would not save

claim 1 of the '216 Patent, because the element still requires "where ***the suction device is adapted to be integrated with one or more mechanical pumps*** without ancillary external connections to form ***the integrated portable vacuum device***." That is, element 1[g] (the seventh requirement of claim 1, as labeled in the Motion) independently requires that the suction device be "integrated with the one or more mechanical pumps," not merely that it lack "ancillary external connections."

In any event, Meditech's argument related to "ancillary external connections" does not rescue its claim. Meditech points to the specification's statement that the invention "can be used as an ancillary/back-up" vacuum pump, as opposed to "a stand-alone primary vacuum pump," "in support of hand-operated vacuum devices." Opp. at 9 (quoting '216 Patent at 16:58–60).

That passage uses the word "ancillary," but it has nothing to do with the claim language at issue. It describes whether the pump serves as the primary vacuum source or a backup to a hand-operated pump. It says nothing about connections between the suction device and the mechanical pumps, *i.e.*, whether "the suction device is adapted to be ***integrated with the one or more mechanical pumps without ancillary external connections***." '216 Patent, element 1[g]; Mot. at 9.

Even on Meditech's incorrect reading, the accused configuration does not plausibly fall within the claim. Meditech says the phrase "describes a self-contained device that does not depend on a separate, back-up external hookup." Opp. at 9–10. But the accused system, by Meditech's own account, is not self-contained. It depends on external tubing and a removable canister, both of which Meditech alleges are "required." *Id.* at 10. Meditech does not even respond to the Motion's demonstration that the alleged pumps sit inside the therapy unit and connect to the canister port through additional internal tubing. *See* Mot. at 12–13; Am. Compl. ¶ 52.

Nor do Meditech's characterizations of Figures 4 and 5 help. As Meditech acknowledges, in Figure 5, suction device 435 connects to vacuum pump 214 via housing 510. Opp. at 10. That

is precisely the point: Figure 5A is an exploded view of the single, combined vacuum device 500 shown assembled in Figure 5B. *See* Mot. at 16. Calling that an "external[] and indirect[] connect[ion]" is misleading. This was critical to the purported invention. *See* Mot. at 16 (citing '216 Patent, 19:40–20:49 (describing benefits of an integrated device free of tubing); *e.g.*, *id.*, 20:1–4 ("if the vacuum device [500] was separate, or relied upon a tether to hold the device to the patient, then movement could jar and detach the suction device")).

Meditech's observation that Figure 4 is labeled as a view of a wireless control unit (Opp. at 10) does not change that the '216 Patent specification refers to suction device 435 as an "external suction device" that "can be connected to the vacuum device 301 at the vacuum attachment port 206 location via the vacuum assisted device tubing 308." '216 Patent at 10:40–54; *see* Mot. at 15.

In sum, Meditech offers no plausible construction under which "integrated" covers components that are not integrated. Instead, it relies on a manufactured, purported claim construction dispute over the term "ancillary" that, even were Meditech right, would not save the claim. That is enough for the Court to dismiss the '216 Patent. *See, e.g.*, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018) (affirming dismissal where the claim term "book holder" could not "plausibly be construed to include or be the equivalent of a camera holder").

## IV. Meditech's Opposition Confirms Its Allegations of Patient-Monitoring Sensors for the '444 Patent Do Not Cure Deficiencies in the Original Complaint.

### A. Meditech's Allegations of Sensors That Monitor Pressure "Related To" a Patient Are Not Allegations of Sensors That Monitor a Patient.

Meditech admits that to cure the deficiency the Court identified, it needed to "identify[] facts that connect an accused sensor to the patient-monitoring requirement or [] clarify[] how the particular asserted claim is satisfied." Opp. at 11–12 (quoting ECF No. 44 at 7). But it did neither.

Meditech asserts that the Amended Complaint now "identifies patient-monitoring sensors that are ***separate and distinct*** from the vacuum sensor." Opp. at 12. Meditech again "alleges that

the V.A.C. Ulta and V.A.C. Ulta 4 therapy units 'include sensors for monitoring the patient,' including sensors that 'identify leaks in real-time' and '[d]etect pressure changes and blockages at the wound site.'" Opp. at 12 (quoting ECF No. 45 ¶¶ 109–115, 124–126). These are the very sensors Meditech identifies as the "vacuum sensor for monitoring a vacuum." Am. Compl. ¶ 108 (claim 18); *accord id.* ¶¶ 138, 141 (claim 19); *see also* Mot. at 18 (noting the same sensors are alleged for both limitations for both claims). And they are the same leak and pressure sensors the Court already rejected: "A sensor that monitors pressure or seal integrity at the wound is not, without more, a sensor that monitors the patient's physiological condition." ECF No. 44 at 7.

The only "more" Meditech adds is a relabeling: "[p]ressure changes" are said to be "related to the 'condition of the patient' and the 'compression of patient tissue surface,'" and as such, "patient physiological parameters." Am. Compl. ¶ 110; *see also id.* ¶ 126 ("[d]etection of a leak or blockage" is "related"). Calling the device's vacuum pressure reading "related to" the patient does not make the pressure sensor a patient-monitoring sensor. *See* Mot. at 19.[1]

Meditech's alternative reliance on the "Smart Instill" feature fares no better. As the Motion explained, those allegations identify no distinct sensor and do not allege that the vacuum sensors monitor the patient. Mot. at 19-20. The Opposition confirms the point: the alleged pressure-change alarm, Opp. at 12–13 (quoting Am. Compl. ¶ 111), and "sensors for determining that instillation of fluid is complete and the fluid is to be removed," *id.* (quoting Am. Compl. ¶ 114), are simply pressure sensors relabeled once more.

---

[1] It is not clear whether the pressure changes themselves, or the detection of such pressure changes due to a leak or blockage, are alleged by Meditech to be the "patient physiological parameters." In either case, both are deemed (incorrectly) to be such parameters because Meditech's attorneys argue that they are "related." That is not enough.

As a fallback, Meditech argues that whether these sensors monitor a patient physiological condition (or just pressure) is a claim construction dispute. *See* Opp. at 13. It is not. The Court already concluded that "the Complaint does not adequately plead the patient-monitoring sensor limitation[,]" ECF No. 44 at 7, and it can do so again. And even if it were a claim construction dispute, Meditech's implicit construction—that a pressure sensor is also a patient-monitoring sensor—is implausible and can be rejected now. *See CTD Networks*, 688 F. Supp. 3d at 499; *Ottah*, 884 F.3d at 1141–42.

Finally, Meditech devotes one paragraph to its doctrine of equivalents ("DOE") theory, the rule that a product lacking a literal claim element may still infringe if it contains an equivalent. *See* Opp. at 14. That theory is conclusory and duplicates its literal infringement theory. Mot. at 20–21. And Meditech ignores—and thus concedes—Defendants' authority that, because the patent requires two distinct sensors, DOE cannot read one of them out of the claim. *See id.*

In sum, Meditech accuses sensors that detect leaks, pressure, or blockages, and argues they are "related to" a patient or wound "condition." It does not—and cannot—allege that leaks, pressure, or blockages *are* such a "condition." The Court should dismiss the '444 Patent.

B. <u>Meditech Does Not Identify Any Patient-Sensor-Controlled Agent Delivery.</u>

The Opposition also confirms an independent ground for dismissal. The '444 Patent requires that a patient-monitoring sensor drive the device's response—adjusting the delivery of a treatment agent or the suction level. Meditech does not allege that a patient-monitoring sensor—rather than the vacuum or leak sensor—"indicates an increase or decrease in the agent is required," as element 18[e2] requires, or "automatically controlling the vacuum above or below the vacuum condition based on the mammal physiological parameter," as element 19[h] requires. *See* Mot. at 20 (citing Am. Compl. ¶¶ 123–125); Opp. at 13–14.

Tellingly, Meditech does not mention that Paragraphs 123–125 of the Amended Complaint tie the alleged "indicat[ion that] an increase … in the agent is required" to the leak detectors. *See* Am. Compl. ¶¶ 123–125 (describing "Seal Check" leak detector). Instead, it points to Paragraph 132, which, it says, "identifies a patient-monitoring sensor—not the vacuum or leak sensor—as the trigger for the change in agent delivery." Opp. at 14. It does not. Paragraph 132 refers back to the "V.A.C. Ulta and V.A.C. Ulta 4 therapy units' sensors ['one or more sensors for monitoring the patient' ***as described above***][.]" Am. Compl. ¶ 132. Meditech incorporates the "Seal Check" detector by reference and calls it a patient-monitoring sensor.

The alleged trigger thus remains the Seal Check detector, which the Court already held insufficient. *See* Mot. at 20; ECF No. 44 at 7–8 ("the trigger alleged is seal integrity, not a patient-monitoring signal indicating that the amount of agent should increase or decrease. . . . That missing connection is apparent from the pleading itself and does not depend on resolving a disputed claim construction."). The Court should hold the same again.

## V. Meditech's Opposition Confirms It Cannot Plausibly Allege Knowledge of Infringement.

Meditech does not dispute that induced, contributory, and willful infringement each require "knowledge of infringement"—that is, knowledge not only of the patent, but also that the accused product infringes it. *See* Opp. at 14–25; Mot. at 22–23. It complains instead that the Motion "collapses three distinct claims into a single 'knowledge of infringement' soundbite." Opp. at 14. Soundbite or not, it is black-letter law.

Meditech also tries to shift its pleading burden. The Court identified exactly what the original Complaint lacked: it did "not identify the accused products discussed, the particular patent claims or product functions at issue, or the substance of what Meditech communicated about infringement." ECF No. 44 at 10; *see also* Mot. at 23–27. The Motion showed that "[d]espite the

Court's invitation," Meditech again withheld the 2020–2023 3M correspondence, and "relie[d] instead on pleaded excerpts." Mot. at 25. Its only answer is that it "produced that correspondence to Defendants prior to the Amended Complaint" and that Defendants "were free to attach" it. Opp. at 18. That is not how pleading works. The burden to plead facts is Meditech's, not Defendants', and, as discussed below, the excerpts Meditech chose do not show knowledge of infringement. *See also* Mot. at 23–27. All three theories therefore fail.

A. Meditech's Factual Recitation Confirms No Actual Knowledge of Infringement.

The parties agree on what Meditech has pleaded. *Compare* Mot. at 23–24, 26-27, *with* Opp. at 16-17. They disagree only on whether it is enough. It is not. Meditech does not dispute that knowledge of the patents and knowledge of infringement are distinct requirements, *see* Mot. at 22, so Meditech's argument—that its facts suffice "[b]ecause the disclosures identified Asserted Patents by number"—fails as a matter of law, Opp. at 17. *See ACQIS LLC v. Wiwynn Corp.*, 614 F. Supp. 3d 499, 504 (W.D. Tex. 2022) (accused infringer must both know of the patent-in-suit and that its conduct amounted to infringement).

Nowhere in the Amended Complaint—and nowhere in its Opposition—does Meditech identify facts rather than conclusory allegations of knowledge of infringement. As Defendants showed in their Motion, every single cited excerpt in the Amended Complaint indicated that Meditech was looking to sell its patent portfolio to 3M. *See* Mot. at 23–24; Am. Compl. ¶ 29 (patent claims "could strengthen the KCI/3M portfolio"); *id.* ¶ 30 (patents "could be of significant value to 3M and offer some defensive strategy from competitors"); *id.* ¶ 31 (Meditech was "divesting [its] patent portfolio" related to vacuum pumps).

Meditech argues that any "inference" must be drawn in its favor. Opp. at 17. Defendants agree. But Defendants ask for no inferences; the excerpts speak for themselves. It is Meditech that

asks the Court to draw an implausible inference—that offers to sell a patent portfolio show 3M's knowledge of infringement. They do not.

Meditech's cases do not help it. It says the facts are more favorable than in *Atlas Glob. Techs., LLC v. Sercomm Corp.*, which held that "general knowledge of a patent portfolio without more" does not show pre-suit knowledge. 638 F. Supp. 3d 721, 728 (W.D. Tex. 2022) ("*Atlas I*") (quoting *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*, No. 6:20-CV-00318-ADA, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021)). But the quotation continues: ". . . is insufficient even to plausibly allege knowledge of a particular asserted patent." *Id. Atlas I* addressed knowledge of the patents. But there is no dispute that Meditech alleged it transmitted the patent numbers through a third-party broker in 2023. *See* Am. Compl. ¶ 31.

Meditech also cites *ACQIS* as establishing the "quantum" of facts required. *See* Opp. at 16 (citing 614 F. Supp. 3d at 505–06). But there, the notice letter "referenced a past infringement lawsuit," "described the enforcement history of ACQIS's patent portfolio," and invited the defendant "to discuss potential licensing arrangements." 614 F. Supp. 3d at 504.

Meditech pleads nothing comparable. Its outreach to Defendants is not alleged to have referenced litigation, or enforcement, or to have sought a license—only to have offered to sell the patents. The *ACQIS* court's conclusion highlights the contrast:

> It is entirely clear from the contents of this Letter that ACQIS is raising a concern of infringement of its patents, albeit without explicitly saying "You infringe." Instead, ACQIS simply takes a more soft-handed approach to express its "[commitment] to entering into a mutually-beneficial business relationship with Wiwynn." But everything in the Complaint and the Letter clearly indicates concerns of infringement and the hope to find a resolution.

*Id.* at 506 (alteration in original) (internal citation omitted). That is a far cry from this case.

Meditech argues that the facts in *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777

(W.D. Tex. 2022), are not comparable to the ones here. *See* Opp. at 17.[2] They are. The *BillJCo* court concluded that "the totality of BillJCo's pleadings on the issue are reed-thin, ***amounting only to allegations that the USPTO and BillJCo notified Apple of at least some of the Asserted Patents.*** Mere knowledge of the Asserted Patents is not enough." 583 F. Supp. 3d at 777. It continued: "The Complaint does not allege that BillJCo's June 2019 Letter notified Apple that it infringed the Asserted Patents or identified Apple products accused of infringement here." *Id.*

So too here. As noted above, Meditech hangs its hat on the fact that "the disclosures identified the Asserted Patents by number," Opp. at 17, and asks the Court to infer that—although Meditech never accused 3M of infringement—3M knew of infringement anyway.

Finally, Meditech also ignores Defendants' explanation that the March 25, 2026 letters, sent one day before the original Complaint was filed, were insufficient to constitute notice. *See* Mot. at 26–27. By not addressing that argument, Meditech concedes it. *Cf. Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 661 F. Supp. 3d 643, 652 (W.D. Tex. 2023) ("*Atlas II*") (holding that failing to address willful blindness conceded it).

B. Meditech's Willful Blindness Theory Is Legally Insufficient.

Willful blindness requires that a defendant (1) subjectively believe there is a high probability of infringement and (2) take deliberate actions to avoid learning of it. *See Atlas I*, 638 F. Supp. 3d at 725. Meditech simply repeats the same allegations—which at most show knowledge *of the patents* in a portfolio sale—and declares that they satisfy both prongs. Opp. at 18–19. Nor does Meditech dispute that, under its standard, "***not believing*** that one infringes, and acting in a

---

[2] Meditech misrepresents what Defendants called "even less favorable" in their Motion. As was clear in context, the "less favorable" aspect was that Meditech had chosen to withhold the actual correspondence rather than attach it, despite the Court's invitation.

manner consistent with ***that*** belief, becomes itself evidence of a deliberate action to avoid learning of infringement." Mot. at 26 n.12.

Meditech's reliance on *Atlas II* is misplaced. *See* Opp. at 19–20. There, the plaintiff alleged that the defendant "refus[ed] to engage" regarding the "need for a license" after being told of plaintiff's "standard-essential portfolio and invited . . . to substantively discuss the patents." 661 F. Supp. 3d at 652. Meditech has pleaded no facts that it sought to license (as opposed to sell) the patents. Further diminishing its utility, the *Atlas II* court simply found that the defendant "has conceded willful blindness by not addressing it" in its motion or sufficiently in reply. *Id.*

Likewise, *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 833–34 (E.D. Tex. 2019), is no better. The cited passage addressed the adequacy of allegations of willful blindness to knowledge of the patents, not knowledge of infringement. *See id.* And the deliberate action there was "a policy or practice of not reviewing the patents of others." *Id.* at 833. Meditech alleges no such policy—only that, for these specific patents, Defendants "divert[ed] Meditech's disclosures to a nonlegal idea-submission process, declin[ed] to perform any infringement analysis, and fail[ed] to respond." Am. Compl. ¶ 34. That is exactly what a large company would do absent any belief in infringement, and Meditech does not argue otherwise. *See* Mot. at 26.

In any event, deliberate avoidance is not enough without a plausibly pleaded belief in a high probability of infringement. Meditech effectively concedes the gap, arguing that "[w]hat 3M actually believed, and why it routed Meditech's disclosures away from any infringement analysis, are quintessential questions of intent that cannot be resolved on the pleadings[.]" Opp. at 20. Meditech asks for a pass on one of the two required prongs.

In sum, because Meditech does not plausibly plead actual knowledge of infringement or willful blindness to knowledge of infringement, its induced, contributory, and willful infringement theories should all be dismissed.[3]

## VI. Dismissal Should Be With Prejudice Because Further Amendment Would Be Futile.

Meditech's request for leave identifies nothing it would add. It does not identify a single additional fact it could plead about the "integrated" limitation in the '216 Patent, a patient-monitoring sensor in the '444 Patent, or the substance of its pre-suit communications.

For the '216 Patent, the relevant facts about the accused system are undisputed. What remains is a pure legal question—the plausibility of Meditech's claim construction—that no amendment can change. That this is the first motion to challenge this limitation is therefore beside the point. For the '444 Patent and knowledge of infringement, Meditech has already had its chance to re-plead its best case. It has failed, and it should not be given a third bite at the apple.

Nor does Meditech's attempt to distinguish Defendants' case law help it. *See* Opp. at 26. That those cases may have involved more egregious conduct does not mean futility alone is insufficient to deny leave to amend. *See* Mot. at 27–28. In any event, further leave would prejudice Defendants, who have already been required to respond to two implausible complaints.

## VII. The Court Should Therefore Dismiss the Amended Complaint With Prejudice.

The Court identified gaps in Meditech's original Complaint, and the Amended Complaint does not fill them. Meditech's claims—that a chain of detachable components is "integrated," that

---

[3] Meditech's Opposition addresses issues on which Defendants did not move. For example, the Court need not reach whether knowledge may be imputed between 3M and Solventum because no knowledge of infringement is plausibly alleged. Defendants expressly preserve all arguments and defenses, including as to imputation and Meditech's burden of proof on each element of indirect or willful infringement, at summary judgment and trial.

pressure and leak sensors monitor a patient, and that offers to sell a patent portfolio conveyed knowledge of infringement—each depend on conclusory labels applied by Meditech that its own factual allegations do not support. Because Meditech identifies no additional facts it could plead, further amendment would be futile. For these reasons and those in the Motion, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety, with prejudice, under Rule 12(b)(6).

Dated: October 22, 2026

Respectfully Submitted,

**HONIGMAN LLP**

*/s/ Scott D. Barnett*

Aimeé Vidaurri
State Bar No. 24098550
aimee.vidaurri@nortonrosefulbright.com
Kathryn Cantu
State Bar No. 24120346
kathryn.cantu@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Tel: (210) 224-5575
Fax: (210) 270-7205

Deborah J. Swedlow
bswedlow@honigman.com
**HONIGMAN LLP**
101 N. Main Street, Suite 850
Ann Arbor, MI 48104
Tel: (734) 418-4200

Scott D. Barnett
sbarnett@honigman.com
Colette E. Verch (*pro hac vice*)
cverch@honigman.com
**HONIGMAN LLP**
39400 Woodward Avenue, Suite 101
Bloomfield Hills, MI 48304
Tel: (248) 566-8300

Ron N. Sklar (*pro hac vice*)
rsklar@honigman.com
Aaron D. Bray (*pro hac vice*)
abray@honigman.com
**HONIGMAN LLP**
321 N. Clark Street, Suite 500
Chicago, IL 60654
Tel: (312) 701-9300

*Attorneys for Defendants Solventum Corporation and 3M Company*

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on October 22, 2026.

*/s/ Scott D. Barnett*
Attorney for Defendants